[No. H024600. Sixth Dist. Sept. 11, 2003.]

In re the Marriage of BRUCE and ANTOINETTE BRINKMAN.
BRUCE BRINKMAN, Respondent, v.
ANTOINETTE BRINKMAN, Appellant.

COUNSEL

Law Offices of Jeralyn K. Spradlin, Jeralyn Kay Spradlin and Daymon Ferguson for Appellant

Bruce Brinkman in pro. per.; and Delman W. Smith for Respondent.

OPINION

PREMO, J.—Antoinette "Toni" Brinkman (Toni) appeals a pretrial order preventing her on the theory of estoppel from presenting evidence that respondent Bruce Brinkman (Bruce)[1] owed $400 a month child support rather than the $150 per month recommended by a family court settlement officer. The estoppel allegedly covered the period between August 2, 2000, the date

---

[1] "As is customary in family law cases, we refer to the parties by their first names for purposes of clarity and not out of disrespect." (*Kuehn v. Kuehn* (2000) 85 Cal.App.4th 824, 828, fn. 2 [102 Cal.Rptr.2d 743].)

of the recommendation, and April 8, 2002, when Bruce's motion in limine was granted and the trial court ordered child support of $150 per month. Toni contends the trial court abused its discretion. Bruce responds that the appeal should be dismissed because the order on his motion in limine is not a final, appealable order.

## FACTS

The parties dissolved their marriage on December 3, 1998, and the judgment provided for the support of their two sons, Scott, 12, and Kyle, 7. Bruce agreed to pay $400 a month in child support, cover the boys on his health policy, and pay half the day care expenses. In June 1998, Bruce stopped paying his share of the day care expenses, and by February 23, 2000, when Toni filed her order to show cause (OSC) for child support arrears, payment of day care fees, medical insurance arrears, and attorney fees, Bruce had dropped the boys from his health policy. Bruce responded to Toni's OSC with a motion filed on February 29, 2000, also for modification of support, reallocation of custody time for the boys from 60 percent with Toni to 40 percent with Toni, and attorney fees. The matters were both heard on March 30, 2000, and the court ordered the parties to orientation and mediation with family court services on the custody issues, and to Settlement Officer James Cox for an early disposition conference (EDC) on the issues of unreimbursed medical costs, day care costs, and undisclosed assets.

Cox received information on the parties' assets and liabilities and as stated above, recommended reduction of support to $150 per month. The recommendation consisted of handwritten notes on a preprinted "Family Court Settlement Officer Order" form with the section stating "IT IS SO ORDERED" and lines for signatures of the parties, the attorneys, and "JAMES FREDERIC COX, Family Court Settlement Officer [¶] Judge Pro Tempore, Superior Court" crossed out. The notes stated that Bruce was to sell a half share in some tickets to Toni; Bruce was to pay Toni child support of $150 per month starting August 1, 2000, half of child care expenses, half of medical insurance costs, and half of unreimbursed health care costs; and Bruce was to provide Toni with a copy of his 1999 tax return. The notes also stated, "Omitted asset issue resolved. Cox proposed 3 resolutions—parties considering all issues to ERC [early resolution conference] for resolution." Cox's initials are written immediately under the notes.

The form on which Cox wrote his recommendation contains a printed advisement stating in relevant part: "2. All prior orders shall remain in effect except as modified hereby .... [¶] 3. The Court retains jurisdiction to implement and interpret the below agreement .... [¶] 4. Either party that prepares a formal order executing this agreement shall submit it first to

opposing counsel or party for approval by signature, and may then submit it [to] the Judge Pro Tem according to local rules ...."

The next day, on August 3, 2000, Bruce's attorney, Delman W. Smith, wrote Toni's attorney, Jeralyn K. Spradlin, to confirm the "tentative agreements reached at the Early Disposition Conference yesterday, August 2, 2000, with Jim Cox, ... " The letter stated "2. The issue of child support has resulted in an indicated decrease to $150.00 per month." Mr. Smith suggested meeting and conferring on child care reimbursement and mentioned two possible arrangements to resolve the attorney fee issues. He concluded, "[p]lease advise immediately as I am leaving for vacation and would like to prepare accordingly." Bruce immediately reduced his support payments to $150 per month without following the procedure set forth on the form. However, he did resume paying for day care. Ms. Spradlin stated at the trial on April 8, 2002, that she advised Mr. Smith by phone that Toni objected to the reduction to $150.

After the recommendation, Toni's OSC was mentioned in Toni's August 14, 2000, ERC statement but there are no references to action taken by the court. Ms. Spradlin stated at the April 8, 2002, trial that the OSC had been continued pending the outcome of the custody and visitation issues and finally was taken off calendar subject to reappearance on the calendar when the custody and visitation issues were finally addressed. Mr. Smith observed, "Counsel has stated on the record that the prior motion was taken off calendar. The Court's file should note that. If it was taken off calendar, there's no retroactivity." Ms. Spradlin retorted, "It was subject to reinstatement. It wasn't taken off calendar."[2] There is no mention of the February 23, 2000 OSC after August 14, 2000, in the clerk's transcript on appeal. The custody issues proceeded on a separate track to an ERC, went to assessment, and were finally resolved in July 2001. Toni's timeshare was increased to 70 percent.

Immediately thereafter, on September 12, 2001, Toni filed a new motion to modify the support order of March 30, 2000, and asking for arrearages on the same facts as the OSC. The March 30 order did not address ongoing support but ordered each party to pay half of all medical costs, exclusive of the insurance premiums, and it referred the other issues raised in the February 23,

---

[2] This court, on its own motion, ordered the record augmented with the family court file. (Cal. Rules of Court, rule 12.) We received the file after the family court clerk reported some initial difficulty in locating it, and we have searched for a record of any action on Toni's February 23, 2000, OSC after the referral to Cox. There was none. There was no order taking the motion off calendar, no calendar setting for a hearing, and no calendar setting reinstating the motion for hearing. We interpret Ms. Spradlin's verbal skirmish with Mr. Smith on April 8 as a request for and opposition to a hearing on the February 23 motion while the court's proceeding to the substantive issues was an implied grant of that request.

2000, OSC to Cox. When the matter finally came up for trial on April 8, 2002, Ms. Spradlin said the motion was "simply to get the February motion back on calendar ...." The same day, the day set for trial on the support issues, Bruce filed his motion in limine requesting the court to bar Toni from presenting evidence or claims for child support other than the $150 recommendation based on "estoppel." That day, and in the formal order filed on June 26, 2002, the court ordered Toni "estopped from asserting the sum of $400 or any sum other than $150.00 of child support pursuant to the recommended order of Settlement Officer James Cox dated August 2, 2000[,] which with such recommended order is deemed to be enforceable as if formally entered. [¶] 2. [Toni]'s motion to modify support dated October 2001 is set for a Long Cause Hearing ...." Bruce was ordered to pay his share of the medical and day care expenses per the original court order. This appeal ensued.

## ISSUES ON APPEAL

Toni contends the trial court abused its discretion in estopping her from holding Bruce to the original order of $400 per month. Bruce contends that the April 8, 2002, order is not appealable because it did not dispose of the entire child support arrears issue but set a trial date for determining the amount of day care and medical expenses owed for the time preceding the recommendation, i.e., from February 23, 2000, to August 2, 2000. Bruce asserts that because these issues were not covered by the April 8 order, that order was not final and appealable; therefore, Toni's appeal is premature and should be dismissed.

## APPEALABILITY

Bruce asserts the decision on his pretrial motion in limine during the trial of the child support arrears issue is not a final order because "the stamped entry [on the minutes for April 8, 2002] and paragraph 2 of the formal Order [filed on June 26, 2002], both indicate that the remainder of the proceeding was set for long cause hearing on June 21, 2002, which eventually was continued until October 4, 2002. The record of the Long Cause Hearing [which the parties agree occurred in October 2002] is not before the court on this appeal, so it is (as a practical matter) impossible to fully evaluate the prejudice to [Toni] (if any) caused by the Order granting the Motion in Limine."

Toni states that her motion was "a post-judgment motion made after a final judgment [of dissolution], and the order denying it is an order made after final judgment. Thus, the order is directly appealable as a matter of law. (Code of Civil Procedure, § 904.1, [subd.] (b); *In [r]e Marriage of Schroeder*

(1987) 192 Cal.App.3d 1154, 1157 [238 Cal.Rptr. 12].) [P]ost-judgment orders relating to child support arrears are [directly appealable]. (*In* [*r*]*e Marriage of Tibbett* [(1990)] 218 Cal.App.3d [1249,] at p. 1251 [267 Cal.Rptr. 642].)"

"An appeal, other than in a limited civil case, may be taken from any of the following: [¶] ... [¶] (10) From an order made appealable by the provisions of the Probate Code or the Family Code." (Code Civ. Proc., § 904.1, subd. (a).) Family Code section 3554[3] allows an appeal to be taken "from an order or judgment under this division as in other civil actions." "This division" refers to division 9 in which section 3554 appears. Division 9 relates to support, including child support. Toni's amended notice of appeal states she appeals "from the whole and every portion of the judgment made and entered in the above-entitled action on April 8, 2002, which is adverse to [Toni] and in favor of [Bruce] ...." The June 26, 2002, order on the April 8, 2002, trial finally determined that the Cox recommendation applied from "8/2/00 through the present...." ■ Postjudgment orders relating to child support arrears are appealable. (*In re Marriage of Tibbett, supra*, 218 Cal.App.3d at p. 1251.)

### EFFECT OF COX RECOMMENDATION

Bruce and the district attorney relied on Cox's recommendation as if it was an order. Bruce immediately began paying the reduced amount, and the district attorney entered the reduction in the family support computer.[4] Ms. Spradlin claimed she orally objected to Mr. Smith about Bruce's payment of the reduced amount, but stated she did not put the matter on the court's calendar for resolution because "[i]t wasn't an order." The trial court's comments focused on Toni's acceptance of the lesser payments apparently without objection until she filed her support modification motion on September 13, 2001, months after the August 2000 recommendation, and Bruce's reliance on that.

The original $400 a month child support order was filed on December 3, 1998. "An order for child support ... continues in effect until the order (1) is terminated by the court or (2) terminates by operation of law ...." (§ 3601, subd. (a).) ■ Termination by operation of law occurs when the child

---

[3] Further statutory references are to the Family Code unless otherwise stated.

[4] According to Ms. Spradlin, Mr. Smith submitted Cox's recommendation to the district attorney's office. The deputy handling the matter stated she telephoned Ms. Spradlin "and asked her if it was true that there was a new ongoing order in the amount of $150. Miss Spradlin stated that there was." At the April 8 hearing, Ms. Spradlin clarified that she was asked "if I knew of the existence of this order or this document. Yes, I did." Ms. Spradlin did not state she agreed the document was an order.

reaches the age of majority (§ 3901), a predetermined contingency happens (§ 4007), or the child support obligation is discharged in bankruptcy (§ 4013; but see *In re Marriage of Cordero* (2002) 95 Cal.App.4th 653, 659 [115 Cal.Rptr.2d 787]; 11 U.S.C. § 523(a)(5)). A court may modify or terminate a support order as the court determines to be necessary (§ 3651, subd. (a)) following the procedures described in sections 3650 to 3693. A party must show changed circumstances to justify a modification. (§ 3680 et seq.) The statutory procedures for modification of child support "require a party to introduce admissible evidence of changed circumstances as a necessary predicate for modification. (See, e.g., *In re Marriage of Popenhager* (1979) 99 Cal.App.3d 514, 521 [160 Cal.Rptr. 379] [child support modification requires changed circumstances]; cf. *In re Marriage of Mulhern* (1973) 29 Cal.App.3d 988, 992 [106 Cal.Rptr. 78] [abuse of discretion to base spousal support modification order on evidence that failed to establish changed circumstances].) ▪ Where child support orders are concerned, 'contested factual issues … require an evidentiary hearing.' [Citation.] The procedures also require judicial findings when requested. (§ 3654 [citation].) As the above requirements suggest, the statutes contemplate that the determinations necessary to support a child support modification will be made by a judge, not simply left in the hands of parties equipped with a computer program. Thus, 'it would constitute an abuse of discretion for the trial court simply to substitute the use of a computer program for the required consideration and appropriate weighing of the statutory factors.' [Citations.]" (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 298 [111 Cal.Rptr.2d 755].)

▪ We have found no section in the Family Code that allows a recommendation of a family court settlement officer to terminate or modify a duly entered support order of the family court. ▪ California Rules of Court, rule 244, allows parties to stipulate that a case may be tried by a temporary judge. The parties in this case did so. Nevertheless, Settlement Officer Cox did not issue an order at the end of the settlement conference. He filed a copy of his recommendation in the court file "so that upon a return I can be up to speed on the case." He testified that from "the overall method that it's written here, the fact that I X'd out my signature line down below and signed up above without an order indicates to me that this was an advisory remark, or an advisory whole discussion only. There is no order on this page." He also testified that he could not remember seeing either Toni or Bruce before but he might have advised one or both of them to follow the recommendation "[n]ot as an order, but as a solution."

Consequently, the December 3, 1998, support order remained in operation until April 8, 2002, at the earliest when the court ordered the recommendation enforceable. (But see further discussion, *post.*) If Bruce wanted Cox's recommendation to have the force and effect of an order in August 2000, he should have complied with the procedure described on the form to obtain an

order. Ms. Spradlin either would have objected, and the matter could have been set for hearing and resolved or she would have consented, in which case there would be no problem.

## ESTOPPEL

Next, should we uphold the trial court's ruling estopping Toni from seeking child support arrears based on $400 a month because she did not formally object to Bruce's unilateral reduction of support to $150 per month? In the last part, we absolved Toni of blame for Bruce's failure to obtain a modification order based on the recommendation. Bruce raises the same argument in support of his claim of estoppel. "[I]f [Toni] had indicated her disagreement with Mr. Cox's $150 per month indicated order, [Bruce] could have initiated proceedings to bring the question before the court for a formal order based upon Mr. Cox's recommendation. Whether, after a formal contested hearing, the court would have adopted Mr. Cox's recommended $150 per month amount can never be known for certain, but in support of the judgment, the trial court impliedly found that such a formal order would have been made if [Bruce] had not been lulled into not proceeding to a formal hearing by [Toni]'s silence and acquiescence." This argument is unpersuasive in this context also.

Bruce also claims that Toni's acceptance of $150 per month is "[e]stoppel by conduct ...." He claims Toni and her counsel intentionally and deliberately led him and the district attorney to believe that a particular thing was true and to act upon such belief. Bruce claims Toni "induced [him] to believe that she would not claim child support [above $150 per month] for that period of time [between August of 2000 and the conclusion of the child custody/visitation evaluation and adjudication process]."

"Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." (Evid. Code, § 623.) The party seeking to establish an estoppel must show by clear and convincing evidence (*In re Marriage of Fell* (1997) 55 Cal.App.4th 1058, 1065 [64 Cal.Rptr.2d 522]) that "(1) the party to be estopped knew the facts; (2) the other party was ignorant of the true facts; (3) the party intended his conduct would be acted upon, or acted in a manner that the party asserting the estoppel had a right to believe it so intended; and (4) the other party relied upon the conduct to his injury. Where one of the elements is missing, there can be no estoppel. [Citations.] The doctrine acts defensively only. It operates to prevent one from taking unfair advantage of another but not to give an unfair advantage to one seeking to

invoke the doctrine. [Citation.]" *(In re Marriage of Thompson* (1996) 41 Cal.App.4th 1049, 1061 [48 Cal.Rptr.2d 882].)

Bruce was not lulled into not proceeding to a formal hearing by Toni's silence and acquiescence, nor was her acceptance of $150 per month estoppel by conduct. Both parties knew that the August 2, 2000, recommendation was not an order and that Toni did not agree to the reduction. Ms. Spradlin stated without contradiction by Mr. Smith at the April 8, 2002, hearing that she telephonically notified Mr. Smith of her objection to the $150 order but that she was waiting for resolution of the custody issues to pursue the support matter. She stated she did not write nor object to the recommendation because "[w]e didn't have to object to it, ... It wasn't an order." Bruce admits in his brief on appeal that "[e]veryone knew that the resolution of the underlying custody/visitation issue would quite likely change the time share component of the guideline calculation, requiring a prospective re-calculation some time within the next few or several months." Since "everyone knew" that the custody issues would affect the support issues, since litigation on the custody issues was proceeding with all the speed the court system could muster, and since the original support order had *not* been modified, Toni did not lull Bruce "into not proceeding to a formal hearing by [her] silence and acquiescence."

At the April 8, 2002, trial, the court inquired whether "estoppel applies since there's been a period of time in which the $150 was accepted without controversy?" As stated above, Ms. Spradlin responded that the matter "was not without controversy. There were several times when it was mentioned. It was not brought to the forefront because the modification motion was still pending." Mr. Smith did not dispute this version of the events.

Furthermore, both parties had initiated proceedings for modification of support in February 2000, notice of both of which were sent to Cox, and neither party pushed those issues to hearing. Both parties apparently saw wisdom in settling the custody issues first, since the amount of support depended on the amount of time the children spent with each parent. In July 2001, Toni's timeshare was increased to 70 percent. Ms. Spradlin stated at the April 8, 2002, trial that "[t]here was no reason to bring another action. [¶] It seems somewhat contentious and inappropriate to bring a contempt action against Mr. Brinkman while the parties where in the throws [*sic*, throes] of a custody and visitation issue. It seemed much more prudent to take what we were getting and wait until the final resolution." Mr. Smith acknowledged as much in Bruce's respondent's brief quoted *ante*.

Toni's acceptance of $150 per month does not support the inference that she agreed to the reduction. "[M]ere acquiescence in payment of an amount

of child … support less than that provided by a final dissolution judgment is [not] sufficient to constitute a waiver or otherwise to bar collection of the unpaid amounts." (*In re Marriage of Hamer* (2000) 81 Cal.App.4th 712, 721 [97 Cal.Rptr.2d 195].) To paraphrase *Hamer*, "[p]erhaps the real issue here is which party had the burden of clarifying which child support orders were in effect in and after [August 2000]. At bottom, we believe that [Toni] was entitled to rely on the entry of the [December 3, 1998] judgment as establishing [Bruce's] support obligations, and that it was incumbent upon [Bruce—upon receiving Cox's recommendation]—to move immediately to [obtain an order of the court executing the recommendation]. Failing that, he was free to seek and obtain a reduction in his support obligations by stipulation or modification motion …. He was not free to simply ignore the judgment—as he admittedly did. Having failed to avail himself of the proper procedures for seeking modification of the support order[] contained in the [December 1998] judgment, [Bruce] is in no position to demand or obtain retroactive approval of this conduct. [Citations.]" (*Id.* at p. 723.)

Finally, there is no evidence that Bruce relied on this conduct to his detriment. Bruce claims that Toni's acceptance of $150 per month for 13 months misled him, and that he was prejudiced "by [Toni's] failure to proceed forward on her Motion, thus abandoning her motion, because [Bruce] in good faith took off calendar his Motion to Compel and further abandoned his attorney fees request. [¶] [Toni], in essence, waited in the lurch to see how the 'custody' matter turned out and then came after [Bruce] [*sic*] RETROAC-TIVELY for incredible amounts of money when the timeshare changed to 70/30. [Toni] turned the issue of child support over to the District Attorney for collection of support, after having accepted 13 months of support at $150.00 per month, <u>NEVER SAYING ONCE THAT THE SUPPORT AMOUNT PAID WAS IN ERROR, SHORT, OR DEFICIENT OR IN ARREARS</u>, and then suddenly attempts to hit [Bruce] with a child support arrears of at least $3,500.00 to now an alleged amount of $30,000.00, potentially." (Original underscoring and capitalization.)

Nevertheless, Bruce did not establish the elements of estoppel. Both parties knew the facts, namely, that the recommendation was not an order. Both parties were represented by counsel to advise them of the law governing modification of child support orders. Both parties had knowledge of how to transform Cox's recommendation to an executable order. Toni was adverse to the recommendation; it was not in her interest to move the court for an order. Consequently, it was up to Bruce to obtain the order. He did not. He has not shown that he was prevented or induced not to obtain the order. The parties interacted through their counsel and the litigation was fierce. Counsel stated the positions of their clients with clarity. There is no evidence supporting the estoppel.

Furthermore, Toni did not wait too long to seek child support arrears. The statute in effect at the time enforcement of a child support order is sought is the statute that is to be applied. (*In re Marriage of Cutler* (2000) 79 Cal.App.4th 460, 477 [94 Cal.Rptr.2d 156].) In February 2000, section 4502 stated, "Notwithstanding any other provision of law, a judgment for child, family, or spousal support, including a judgment for reimbursement or other arrearages, is exempt from any requirement that judgments be renewed. A judgment for child, family, or spousal support, including all lawful interest and penalties computed thereon, is enforceable until paid in full." (As amended by Stats. 2000, ch. 808, § 45.5, eff. Sept. 28, 2000.)

Bruce began flouting the December 1998 judgment in September 1999 when he stopped paying for day care. He also failed to pay his half of the medical insurance and various unreimbursed medical and dental costs.[5] Toni's OSC for arrears was filed on February 23, 2000, and her motion to modify support after the custody matters were settled in July 2001, came shortly afterward in September 2001.

Both applications were timely filed. "[A]n action to recover an arrearage in [payments for the support of a minor child] may be maintained at any time within the period otherwise specified for the enforcement of such a judgment, notwithstanding the fact that the child has attained the age of 18 years." (§ 4503.) The "period otherwise specified for the enforcement of such a judgment" (*ibid.*) is until the judgment is "paid in full." (§ 4502.) Toni's OSC was timely filed.

### ABUSE OF DISCRETION

Next on June 26, 2002, the trial court ordered Cox's recommendation "to be enforceable as if formally entered." This leads to the question whether that order was an abuse of discretion.

██ A party seeking a modification must present evidence that establishes a change of circumstances. (*In re Marriage of Popenhager, supra,* 99 Cal.App.3d at p. 521.) When there is a dispute over facts relating to the financial circumstances of the obligor, an evidentiary hearing is required. (*In re Marriage of Cheriton, supra,* 92 Cal.App.4th at p. 298.) A child support order which is not supported by evidence of change of circumstances, is an abuse of discretion. (*In re Marriage of Mulhern, supra,* 29 Cal.App.3d at p. 992.)

Section 4056 is "clear that a court *cannot* exercise its discretion in making a child support order without saying why, either in writing or on the record."

---

[5] Bruce claims he had "offsetting reimbursement claims of his own ...."

(*In re Marriage of Hall* (2000) 81 Cal.App.4th 313, 315 [96 Cal.Rptr.2d 772].) "[T]he information required by section 4056, subdivision (a) must be supplied sua sponte as part of the order or judgment." (*Rojas v. Mitchell* (1996) 50 Cal.App.4th 1445, 1452 [58 Cal.Rptr.2d 354].) "[G]iven the facial noncompliance of the judgment with sections 4055 and 4056, the judgment must be reversed and remanded" (*In re Marriage of Hall, supra,* 81 Cal.App.4th at p. 318) for a finding of arrears and the taking of evidence on the appropriate level of support for the period between February 2000 and September 2001.[6]

In this case, there was no evidence of a change of circumstances in the record. At the April 8 trial, Cox testified that he had no recollection of the case and that his notes did not refresh his recollection. He did not remember if he used "DisoMaster" calculations to arrive at the $150 per month figure although he testified that it was his "[a]lmost invariabl[e]" custom and practice to do so. Nothing was presented to the trial court to establish the parties' income and liabilities. Since Cox did not modify the support obligation in August 2000, and there was no evidence before the court establishing changed circumstances, the June 23, 2002 order reducing child support to $150 per month cannot stand. There is no evidence to support the trial court's reduction of support to $150 per month. The court did not state its reasons for modifying the December 1998 order except that Cox was going to recommend one. Consequently, the order was an abuse of discretion. On remand, the trial court should determine arrears in which Toni has "a vested property right protected by the California Constitution. [Citation.]" (*Cutler, supra,* 79 Cal.App.4th at p. 477.)

## DISPOSITION

The judgment is reversed and the matter remanded for proceedings consistent with this opinion. Costs are awarded to appellant.

Rushing, P. J., and Bamattre-Manoukian, J., concurred.

---

[6] Toni's second motion was filed in September 2001 and heard in October 2002. That time period is not included in this appeal.