Filed 8/5/14  Marriage of Wellman an dZiino CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re the Marriage of LAURA WELLMAN and ROBERT ZIINO. | |
| LAURA WELLMAN,<br><br>        Appellant,<br><br>v.<br><br>ROBERT ZIINO,<br><br>        Respondent. | A138733<br><br>(Humboldt County<br>Super. Ct. No. FL020280) |
| ROBERT ZIINO,<br>        Respondent,<br>v.<br>LAURA WELLMAN,<br>        Appellant;<br>HUMBOLDT COUNTY DEPARTMENT<br>OF CHILD SUPPORT,<br>        Real Party in Interest. | A139887<br><br>(Humboldt County<br>Super. Ct. No. DR090139) |

Robert Ziino seeks to enforce a judgment against Laura Wellman as if it were a judgment entirely for child support.  Ziino contends this characterization of the judgment was settled in earlier proceedings and Wellman is precluded by res judicata from arguing otherwise.  The family court agreed with Ziino.  We view the earlier proceedings differently and therefore reverse.

1

# I.    BACKGROUND

Ziino and Wellman were last before this court in 2012.  (See *Ziino v. Wellman* (May 4, 2012, A131473) [nonpub. opn.].)  As we related then, these two lived together from 1994 through 2002.  Although never married, they were romantically involved and had a child.  In 2001, as the two were unwinding their relationship, Wellman gave Ziino two due-on-demand promissory notes.  The notes obligated Wellman to pay Ziino a total of $800,000 (one note was for $300,000 and the other for $500,000) on a future due date of Ziino's choosing, or if Wellman should happen to file for bankruptcy.  The notes came due in short order when Wellman filed for bankruptcy in 2002.  (*Ibid.*)

Our earlier decision addressed whether Ziino could enforce the notes against Wellman.  We agreed with the trial court that an April 2007 bankruptcy court order allowing Ziino's creditor's claim based on the notes was res judicata and established the notes could be enforced in a breach of contract action.  We therefore affirmed the trial court's money judgment, in civil case No. DR090139,  in favor of Ziino on the notes. (*Ziino v. Wellman, supra*, A131473.)  Although the purpose of the notes was immaterial to our decision, we related Ziino's position that "they were compensation for child support he would provide and implemented a negotiated division of property."  (*Ibid*.)

Subsequently, in the parties' long-running family court matter, case No. FL020280, Ziino asked the Humboldt County Department of Child Support Services (Department) to enforce the money judgment in case No. DR090139 as a child support order.[1]  In July 2012, the Department filed a notice it was receiving an assignment of child support and would become the substitute payee.

Wellman perceived the Department's notice as attributing the entire money judgment in case No. DR090139 to child support, but believed no determination regarding child support had ever been made.  While the notes, she asserted, were indeed

---

[1] The same judge presided over the family and civil proceedings.

2

given in part for child support, they were also given for property division, and no court had apportioned the sums due under the notes amongst these two purposes. Concerned about being burdened with not merely a significant judgment, but one for child support,[2] Wellman requested an order from the family court determining child support arrears and child support.

Ziino and the Department responded that the money judgment was entirely for support, as the judgment itself stated it was "for child support as set forth in the findings and final judgment of the Bankruptcy Court."

The family court, speaking at the hearing on Wellman's request, stated any issue of apportionment "should have been litigated a long time ago in the bankruptcy court." It further believed the statement in the money judgment that the judgment was "for child support" was conclusive, could have been challenged on appeal, but had not been. The court declined to perform any apportionment and filed its order denying Wellman's request on March 7, 2013, stating simply "[t]he Judgment in DR090139 is confirmed as the child support judgment." Wellman filed a timely notice of appeal of this order (case No. A138733).

The trial court, in the civil case No. DR090139 then issued, on July 25, 2013, an order requiring Wellman to pay certain monthly sums toward her child support arrearages, proceeding as though the entire judgment in case No. DR090139 was for child support. Wellman also timely appealed this later order (case No. A139887). The appeals have been consolidated for our review.[3]

---

[2] Wellman articulates a number of serious consequences of having an unpaid child support judgment, as opposed to an ordinary judgment. Ziino does not dispute a child support judgment is more onerous.

[3] Ziino does not dispute Wellman's assertion that the family court's orders relating to child support arrears are appealable. (See *In re Marriage of Brinkman* (2003) 111 Cal.App.4th 1281, 1287 [" '[P]ost-judgment orders relating to child support arrears are [directly appealable].' "].)

3

## II.    DISCUSSION

On appeal, Wellman asserts no court has ever determined the promissory notes, or the judgment on them, were solely for child support.  Ziino[4] does not contend the state trial court *itself* (in either the family or civil proceeding) made such a ruling, and we see nothing in the record showing it did.[5]  Instead, Ziino argues the bankruptcy court proceedings were the proper forum to raise the issue of apportionment of the notes between child support and property division, and Wellman's failure to raise the issue in that forum precluded further litigation of the matter under principles of res judicata.

In furtherance of judicial comity, federal law governs the preclusive effect of federal bankruptcy court orders.[6]  (*Nathanson v. Hecker* (2002) 99 Cal.App.4th 1158, 1163; *Taylor v. Sturgell* (2008) 553 U.S. 880, 891 (*Taylor*).)  "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.' "  (*Taylor*, *supra*, 553 U.S. at p. 892.)  With "claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.' [Citation.]  Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or

---

[4] As noted, the Department participated in the family court proceedings.  It has not, however, participated on appeal.  Only Ziino defends the trial court judgment.

[5] To the contrary, in the civil case, the trial court manifestly granted summary judgment based on res judicata and had no need to assess the purpose of the notes.  Moreover, Ziino's statement of undisputed facts and the trial court's order granting summary judgment both stated the notes were given "in consideration for child support *and property division*."  (Italics added.)  The judgment entered following summary judgment merely stated the judgment was one "for child support *as set forth in the findings and final judgment of the bankruptcy court*."  (Italics added.)  This statement answers no questions, simply pointing us back to the bankruptcy court proceedings, which we shall discuss.  Based on all this, it is unsurprising the issue of the notes' purpose never arose during the parties' previous appeal.

[6] The parties all proceed as if California law applies.  It does not, but it may nonetheless inform our analysis under federal law as appropriate, to the extent California and federal legal standards do not diverge.

law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." (*Ibid.*) "[T]hese two doctrines protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.' " (*Ibid.*; accord, *DKN Holdings LLC v. Faerber* (2014) 225 Cal.App.4th 1115, 1121–1122.) Where, as here, preclusion hinges on interpretation of records in court proceedings and there are no disputed material facts, our review is de novo. (*Littlejohn v. United States* (9th Cir. 2003) 321 F.3d 915, 919; accord, *Roos v. Red* (2005) 130 Cal.App.4th 870, 878.)

Claim preclusion is inapplicable here—indeed, it does not even appear that Ziino meaningfully asserts it, as he does not address what "claims" are at issue, let alone how they are the "very same" (*Taylor*, *supra*, 553 U.S. at p. 892). As best we can determine, Ziino, in the bankruptcy court, pursued a creditor's claim against Wellman for the value of the promissory notes, regardless of the notes' purpose. In the family court, Ziino, through the Department, sought an order to have those concededly enforceable notes and the related civil court judgment deemed, and enforced as, a child support obligation. The two proceedings and claims are fundamentally different.

Under federal law, four factors guide us in assessing whether a later claim is the same as an earlier one. We ask "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." (*Turtle Island Restoration Network v. U.S. Dept. of State* (9th Cir. 2012) 673 F.3d 914, 918.)[7] Here, (1) apportionment of the

---

[7] Although the final factor has been viewed "most important," no "single criterion can decide every res judicata question; identity of causes of action 'cannot be determined

5

notes in the family court will not undermine the bankruptcy court's determination of the notes' validity; (2) no evidence of apportionment was presented in the bankruptcy court; (3) the right to collect on a debt and the right to have a debt, or portion thereof, deemed as child support are significantly different; and (4) although both the family court and bankruptcy proceedings concern the promissory notes, the bankruptcy proceeding did not arise from a dispute regarding apportionment of the notes or the amount of a child support obligation. (See *Blalock Eddy Ranch v. MCI Telecommunications Corp.* (9th Cir. 1992) 982 F.2d 371, 378 [prior suit rejecting MCI's rights to ranch land under an easement theory did not preclude MCI from bringing a later proceeding against ranch for eminent domain to obtain the equivalent land rights]; *Andersen v. Chrysler Corp.* (7th Cir. 1996) 99 F.3d 846, 852–853 [noting importance of examining the similarity of claims at a "sufficient level of specificity"]; accord, *Boblitt v. Boblitt* (2010) 190 Cal.App.4th 603, 612–613 [although same incident of domestic violence may be relevant to spousal support claim and various civil tort claims, family law rights and tort rights do not vindicate the same rights, and there was no claim preclusion]; *In re Marriage of Newman* (2000) 80 Cal.App.4th 846, 851 [an out-of-state "decree is entitled to full faith and credit, and has res judicata effect, on the sole issue it determined: dissolution of the marriage. It does not, and does not purport to determine the issue of spousal support."].)[8]

Issue preclusion is also inapplicable. "Under this doctrine, a party is precluded from relitigating an issue if four requirements are met: (1) there was a full and fair

---

precisely by mechanistic application of a simple test.' " (*Costantini v. Trans World Airlines* (9th Cir. 1982) 681 F.2d 1199, 1202 & fn. 7.)

[8] *Takahashi v. Board of Education* (1988) 202 Cal.App.3d 1464, which Ziino cites, is inapposite. There, both the first and later proceedings concerned whether the plaintiff had been wrongfully terminated in violation of her contractual right to employment. (*Id.* at pp. 1468–1473, 1476.) In addition, the case involves California claim preclusion law, not federal law.

opportunity to litigate the issue in the previous action; (2) the issue was actually litigated; (3) there was final judgment on the merits; and (4) the person against whom [issue preclusion or] collateral estoppel is asserted was a party to or in privity with a party in the previous action." (*Wolfson v. Brammer* (9th Cir. 2010) 616 F.3d 1045, 1064; accord, *People v. Garcia* (2006) 39 Cal.4th 1070, 1077 [enumerating similar factors under California law].)

Reviewing the bankruptcy court orders in the appellate record, the parties did not actually litigate, and the court did not decide, the question of apportionment Wellman sought to have determined in the family court.[9]

What happened is this: After Wellman's bankruptcy was underway, Ziino filed an adversary proceeding to block Wellman's discharge under title 11 United States Code section 727(a)(4),[10] because she failed to inform the court of her interest in her parents' trust fund, and to have the debt due under the notes deemed nondischargeable under former title 11 United States Code sections 523(a)(5) and (a)(15), governing debts to spouses and former spouses. Following Wellman's stipulation, the bankruptcy court entered an order denying Wellman's discharge based on her nondisclosure under title 11 United States Codes section 727(a)(4). It also ruled, however, Ziino could not establish the debt due under the notes came within former title 11 United States Code sections 523(a)(5) or (a)(15), as notably Ziino and Wellman were not spouses.

---

[9] Ziino's contentions regarding what Wellman previously argued to the bankruptcy court, without relating those arguments to what the court decided, are irrelevant. In any case, Wellman, in her arguments to that court, never conceded the promissory notes were solely for child support. Rather, she repeated Ziino's contention the notes were for both division of property and child support. She also argued to the extent Ziino claimed the notes were given in exchange for child support, that support, already required by law, could not have been valid consideration for the notes.

[10] This section states a court "shall grant the debtor a discharge, unless [¶] . . . [¶] (4) the debtor knowingly or fraudulently in connection with the case [¶] (A) made a false oath or account." (11 U.S.C. § 727(a)(4).)

Ziino also filed his creditor's claim for $800,000 based on the notes, asserting they were given for "support" and "property division." Wellman opposed the claim and in 2005 moved for summary judgment. She did not dispute the amount of Ziino's claim.[11] She argued, however, the notes were unsupported by consideration and were not lawful agreements as to child support or settlement of property division between non-spouses. The bankruptcy court denied Wellman's motion. Later, in 2007, Ziino moved for summary judgment on his creditor's claim and in April 2007, the bankruptcy court allowed it.

In its order granting Ziino summary judgment, the bankruptcy court noted "[i]t is undisputed that the notes are for child support and property division" and concluded, in the next sentence, "[t]here is clearly consideration supporting the obligations evidenced by th[e] notes." It then quoted at length from its 2005 order denying Wellman's summary judgment motion, in which it concluded " 'a private agreement which does provide for sufficient support is binding and enforceable.' " It then rejected Wellman's other asserted defenses, such as inducement, duress, and diminished capacity to contract.

The order made no apportionment of the sums due under the notes between child support and property division. For instance, the bankruptcy court did not determine the notes could not have been given, in part, for settlement of division of property. Nor, on the flip side, did the bankruptcy court worry whether the entire $800,000 sum could have been in exchange for, and fully demanded for, child support. In fact, it does not appear to have been necessary for the bankruptcy court to make any apportionment when it allowed Ziino's claim, as it was satisfied there was valid consideration "supporting the obligations evidenced by th[e] notes." Notably, Ziino does *not* argue the bankruptcy court performed

___

[11] Ziino argues if the amount of a claim could be contested during the bankruptcy (see 11 U.S.C. § 502(b)), then Wellman had to bring the apportionment issue then. Not so. Faced with notes totaling $800,000, the absence of a contest regarding amount is unsurprising. Moreover, the lack of such a contest does not mean Wellman conceded the *total amount* was for any specific *purpose*.

an apportionment, *or even had to perform one*, to find consideration for the notes, to allow his claim, or for any other reason.[12] (Cf. *American Special Risk Ins. Co. v. City of Centerline* (E.D. Mich., June 24, 2002, 97-CV-728974-DT) 2002 WL 1480821, at p. *7 [denying issue preclusion because "the allocation issue before this Court was not actually litigated in the *Westchester* action," where the prior court merely assumed one party should bear 100 percent of costs].)

Finally, when the Ninth Circuit's Bankruptcy Appellate Panel affirmed the bankruptcy court's claim allowance, it too noted the dual purpose of the notes and affirmed the bankruptcy court's conclusion there had been consideration for them.[13]

In sum, neither aspect of res judicata precludes litigation of the apportionment issue in the family court case below.[14]

### III.    DISPOSITION

Neither the judgment in case No. DR090139, nor the bankruptcy court proceeding, preclude litigation of apportionment. The order confirming the judgment in case No. DR090139 as entirely one for child support judgment is vacated. So is the

---

[12] Nor has Ziino argued there are other decisions from the bankruptcy case that would support his position that an apportionment actually or necessarily occurred.

[13] We express no position on whether the bankruptcy court's ruling, or that of the appellate panel, was correct or erroneous in any respect.

[14] Because we reach this conclusion, we need not and do not address the potential effect of a recent Florida trial court decision, in a related case, that also concluded no court has yet reached the apportionment issue. We note it is not clear whether that decision has been or will be appealed. Nor have the parties addressed the effect of an appeal of that decision.

We therefore deny Wellman's related request for judicial notice, filed February 25, 2014, because the additional Florida court decision it seeks to have us review is not relevant to our analysis. (See *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1141, fn. 6 [denying request for judicial notice of irrelevant materials].)

9

later order requiring payment of child support arrears.  The matter is remanded for further proceedings on apportionment.  Costs to appellant.

_____
Banke, J.

We concur:

_____
Dondero, P. J.

_____
Becton, J.[*]

---

[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.