Filed 7/3/23  Marriage of Mona and Schmelzer CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re Marriage of STEPHANIE MONA and TROY SCHMELZER. _____ STEPHANIE MONA, Appellant, v. TROY SCHMELZER, Respondent. | B317609 (Los Angeles County Super. Ct. No. BD626890) |

APPEAL from an order of the Superior Court of Los Angeles County, Wendy L. Wilcox, Judge.  Affirmed.

Appellant, in pro. per.

No appearance by Respondent.

————————————

# INTRODUCTION

This is an appeal from a post-judgment order modifying child and spousal support and determining arrearages payable by Troy Schmelzer to ex-wife Stephanie Mona.[1]  The family court ordered Troy to pay down the arrearages he owes for child support, spousal support, and unreimbursed medical expenses by $100 each, or a combined $300, per month.

Stephanie appealed.  She argues the trial court's order amounts to an abuse of discretion, as it "would take 254 years and 7 months [for Troy] to [pay the balance due]" to Stephanie. Troy has not made any appearance on appeal.

We find no error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We piece together the following from the scanty record we were provided.

## I.     Background Information

Troy and Stephanie married on February 17, 2001.  They separated on July 13, 2015.  They have two minor children, ages 12 and 14, and one adult child, age 20.

On September 10, 2015, Stephanie filed a petition for dissolution of her marriage to Troy.

On October 17, 2016, the judgment of dissolution (judgment) was filed and entered by the court.  We were not provided a copy of the parties' judgment.  We glean some of the judgment's terms from pleadings filed four and a half years later. The judgment ordered Troy to pay Stephanie $10,114 in child

---

[1]     We refer to the parties by their first names.

2

support per month.  The judgment also ordered Troy to pay Stephanie spousal support of $6,852 per month.

II.  **Post-Judgment Motion to Modify Child and Spousal Support**

On April 9, 2021, Troy filed a request for order (RFO) to modify visitation, child support, spousal support, and for the "[r]elease of [Troy's] California Law License"; he also filed an Income and Expense (I&E) declaration (which was not provided to us).  He sought to modify the judgment's child support order to guideline amount and to modify and/or terminate spousal support.

Troy stated there has been "a substantial and material change of circumstances since entry of [the judgment]" in that his employment as a partner at Baker Hostetler was "involuntarily terminated" on February 28, 2019.  The judgment's support terms were based on his then income of $707,136 per year.  He has "since been unable to find comparable employment."

After months passed with "no success in finding a position in a law firm," Troy started his own practice, Schmelzer IP.  As he was undertaking this effort, he was notified in October 2019 of the "imminent suspension of [his] California law license due to falling behind on child support payments in the preceding months in which [he] had no income."  This "disqualifie[d] [him] from providing services or earning income as an attorney in California."  He thus relocated his law practice to Arizona where he also has a law license.  However, the global COVID-19 pandemic then began and "added to [Troy's] difficulties in finding employment."

"Although [his] Arizona law license remains active for now, the suspension of [his] California license is very public and

3

prominent and has had the consequence of making it virtually impossible to find employment as an attorney, even in Arizona." Until his child support obligation is "reduced to a level commensurate with [his] substantially changed circumstances, so that [he] can be in compliance going forward and obtain release of [his] law license, [he] will continue to be unable to find substantial employment in [his] field." Troy requested that the court "order the California Department of Child Support Services to issue a release of his California law license no. 211460 to the State Bar of California."

Troy further alleged that on March 30, 2020, Stephanie "petitioned the State Bar of Arizona to revoke [his] Arizona law license." He alleged: Stephanie sought "to deprive [him] of his ability to generate income by her petition with the State Bar of Arizona for his permanent disbarment, based on false allegations including that [he] had quit his job to 'find himself. . . . [T]his is simply not true. [¶] If [Stephanie] truly has a continued need for spousal support from [him], she would not petition his licensing authority to revoke his law license at all, much less make such a petition based on false and damaging allegations. . . . It would not be just or equitable for this court to continue ordering spousal support to a party that is actively seeking to strip the supporting party of his ability to earn income."

Troy next alleged he "currently is unable to support himself and has no ability to pay spousal support." He "completely tapped all financial resources, and at this point [was] living on the basis of loans from [his] mother and the goodwill of a friend." He alleged that Stephanie "has been living comfortably in the home of the boyfriend with whom she cohabits for the last two years, with the children having rooms and attending high quality

4

schools. She has a higher monthly income (unemployment compensation) than [him]." He provided, as an exhibit, a copy of Stephanie's resume as an "Event Design and Production Manager" where she describes herself as a "[r]esults-oriented professional with over 15 years of experience." She previously attended law school and also has experience working as a legal secretary prior to event planning.

On May 21, 2021, Stephanie filed her responsive declaration opposing Troy's RFO. She alleged that Troy "stopped paying child support & spousal support in April 2019, and currently owes $275,000 child support arrearages and $206,000 in spousal support arrearages." She and the children are "surviving by living with her boyfriend in Van Nuys, borrowing money from her parents, and receiving government assistance in the form of Cal-fresh (food stamps) & Medi-Cal (health insurance)." Due to Troy's "continued non-payment, she was forced to file for bankruptcy in August 2019, and had both of her vehicles repossessed in December 2019."

That same date, Stephanie filed an I&E declaration, a copy of which was not included in the record before us.

On May 25, 2021, Los Angeles County's Department of Child Support Services (DCSS) filed a responsive declaration that the "current order for child support should remain in full force and effect *unless* there is a change in circumstances, then guideline child support should be ordered." (Italics added.)

On May 26, 2021, Troy filed an updated I&E declaration—again not included in the appellate record.

At the hearing held July 30, 2021, the court found there has been a material change in circumstances warranting a modification of child and spousal support. We were not provided

5

a reporter's transcript of this hearing. The minute order provides the court "note[d] that child support and spousal support shall be based on the parties' current Income and Expense Declaration[s]." The minute order further provides that hearing "is continued to October 29, 2021" and that the parties are ordered "to submit proposed DissoMasters based on the current Income and Expense Declarations by the parties."

III. **Post-Judgment Motion to Determine Arrears Owed**

On September 1, 2021, Stephanie filed an RFO for a determination of arrearages owed for child support, spousal support, and unreimbursed medical expenses. She alleged Troy informed her in January 2019 that "he would be quitting his job as a patent attorney" and "taking some time off 'to find himself.'" She initiated a case against Troy with DCSS on April 15, 2019. She "was forced to file for bankruptcy, which was granted in August 2019." She was then informed by Troy that he "would be starting his own law firm, and that it would be months before he would be able to pay any form of support again."

She also filed a declaration of payment history, stating that Troy owes her $287,924.75 in child support arrearages, $85,980 in spousal support arrearages, and $3,685 in unreimbursed medical expenses; the sums include interest.

On September 30, 2021, Stephanie filed another RFO re modification of child custody because she was moving to Maryland with the children. A hearing was set for November 19, 2021.

On October 5, 2021, Troy filed an updated I&E declaration. On October 6, 2021, Stephanie filed her I&E declaration. On October 8, 2021, Troy filed another I&E declaration. The record

provided to us did not include any of the parties' I&E declarations.

Based on the parties' current and updated I&E declarations, Troy argued in his October 5, 2021 brief to the court that child support should be $323 per month and spousal support should be $106 per month. He also notified the court that his California law license "is currently on administrative suspension due to his inability to be current on child support payments, and his Arizona law license is on probation status as a result of [Stephanie's] complaint to the Arizona State Bar asking that he be permanently disbarred." He explained that for him to "obtain reinstatement of his California law license, and to avoid suspension of his Arizona law license, he must come into compliance with child support payments going forward, and arrange a repayment plan for child support arrears." He suggested $100 per month for the repayment of arrears.

In her brief filed October 6, 2021, Stephanie informed the court that she has not had a job since 1999 when she was a legal secretary and has no marketable skills. However, she stated in the spousal support declaration attachment (Judicial Council form FL-157) that she recently "[got] her real estate license in California" but has since moved with the children to Maryland to live with her mother. Stephanie calculated child support for all three children, despite the fact that the eldest child was no longer a minor.

IV. **Hearing and Ruling**

On October 21, 2021, the court heard Stephanie's RFO re arrearages owed. We were not provided a reporter's transcript of this hearing, which severely restricts our review. The minute order provides the "matter with respect to the child support and

7

spousal support arrearages is heard" and the "matter with respect to the unreimbursed medical expenses is heard." The court ordered Stephanie to prepare an updated declaration of payment history through March 30, 2021. The court ordered Troy to pay Stephanie the unreimbursed medical expenses pursuant to the judgment. The court further ordered Troy to pay Stephanie $100 each towards child support arrearages, spousal support arrearages, and unreimbursed medical expenses every month, commencing November 1, 2021, making it a combined $300 monthly due on the first of every month.

The hearing continued on October 29, 2021. We were provided a reporter's transcript of this hearing. The court noted "it found a material change of circumstance at the previous hearing." The court ordered Troy to pay Stephanie $296 per month as and for child support commencing November 1, 2021.

Stephanie informed the court that she "redetermined [the arrearages] going back retroactive to April, and it came out to . . . [$]243,000 in child support arrearages. You said a hundred dollars a month. That would make it 202 years for him to pay it back."

The court explained that the October 21st order "is based on where we are today." Troy "has to get his licenses in order" so that he may "go get a job [so that he] can pay you more . . . . It's what he raised last time, and which is my concern, is that who's going to hire him if, in fact, he has issues with the state bar in California and the state bar in Arizona? He's trying to clear those up, and so he can go and get a job that's actually going to pay him something that is going to pay you back faster. That's why I said, this is what we're working with today. But I expect that to change once he gets his licenses in order. Because there

8

are jobs out there that he can get that are going to pay him a lot more than what he's trying to do himself."

The following exchange took place between the court and Troy:

Troy stated, "The status of my legal licenses is depending on me getting current with child support." He requested that the court order "a temporary child support amount . . . based on all the numbers we have right now, so that [he] can at least get current and get [his] licenses in good order."

The court: "[C]orrect me if I'm wrong, but you said you would go and get a job from somewhere—from a firm, rather than what you're doing today, once you get your licenses cleared; correct?"

Troy: "My earning capacity will certainly be greater . . . if I had my law licenses."

The court: "[I]f [Troy's] license is cleared up, then [he] can go and find a job working for a firm. [He] worked for great firms previously. [He] can work for a firm, which will make a lot more money than [what] you're making a month by yourself. Right?"

Troy: "Yes. Yes."

The court: "[T]hat's what you said last time we were together, so that you can go and do that. So you can make a lot more money and you can get caught up and pay [Stephanie] back. [¶] . . . [¶] And that's why I said that this is where we are today. But I expect it to be different once we get this order in line, so he can clear up the [state bar] license issues."

"[I]n order to determine what the amount of support is, we need . . . to understand what the custody and visitation schedule [is]. I can't get to what that schedule is until we go through your RFO in November regarding the move-away, because A) I have to

9

address the *LaMusga*[2] factors, and B) for a move-away, . . . the court orders the parenting plan assessment II.  "I think what I need to do is at least—I need to have [Troy's] request for order trail the custody and visitation request for order, because the only way that I can determine what the numbers are . . . based on."  The court "continue[d]" Troy's RFO and "ha[d] it trail [Stephanie's] RFO"; it reserved all other issues for later determination.

This appeal followed.

## DISCUSSION

Stephanie contends the trial court's order on the child and spousal support arrearages amounts to an abuse of discretion, and requests that we reverse.

Finding no error, we affirm.

## I.  **Applicable Law**

A motion for the determination of arrearages is a "species of declaratory judgment or accounting unconnected with any specific enforcement of the support obligation."  (*County of Shasta v. Smith* (1995) 38 Cal.App.4th 329, 334; see *In re Marriage of Sabine & Toshio M.* (2007) 153 Cal.App.4th 1203, 1214 [a family court has the authority "to determine whether any arrearages exist and, if so, the amount due"]; *In re Marriage of Robinson* (1998) 65 Cal.App.4th 93, 98 [a determination of arrearages " 'rests upon an existing order rendered in a family law action' "].)  The determination of arrearages is "treated as a money judgment" enforceable under Family Code section 290.  (*County*

---

2       Referring to *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072.

10

*of Shasta*, at p. 334; see *In re Marriage of Lackey* (1983) 143 Cal.App.3d 698, 702–203.)

The Family Code permits a trial court to modify or terminate a child support order "at any time as the court determines to be necessary." (Fam. Code, § 3651, subd. (a).) A party seeking modification of a child support order must " 'introduce admissible evidence of changed circumstances.' " (*In re Marriage of Williams* (2007) 150 Cal.App.4th 1221, 1234.) "The party seeking the modification bears the burden of showing that circumstances have changed such that modification is warranted." (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1054.)

Modification of spousal support, even if the prior amount is established by agreement, requires a material change of circumstances since the last order. (*In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 396.) Change of circumstances means a reduction or increase in the supporting spouse's ability to pay and/or an increase or decrease in the supported spouse's needs. (*Ibid*.) It includes all factors affecting need and the ability to pay. (*Ibid*.) A party moving to modify or terminate spousal support usually has the burden to show a material change in circumstances since the time of the last support order. (*In re Marriage of West* (2007) 152 Cal.App.4th 240, 246.) A trial court considering whether to modify a spousal support order considers the same criteria set forth in Family Code section 4320 as it considered in making the initial order. (*Dietz*, at p. 396.)

A change of circumstances may include, for example, an " 'increase or decrease in either party's income available to pay child support.' " (*In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 556.) Regarding child support modification,

11

" '[s]o long as the statewide statutory formula support requirements are met (Fam. [Code,] § 4050 et seq.), the determination is made on a case-by-case basis and may properly rest on fluctuations in *need* or *ability to pay*.' " (*Ibid*.)

II.     **Standard of Review**

We review the family court's order granting or denying a request for a modification of child support and spousal support for abuse of discretion.  (*In re Marriage of Usher* (2016) 6 Cal.App.5th 347, 357 (*Usher*) [child support]; *In re Marriage of Berman* (2017) 15 Cal.App.5th 914, 919 [spousal support].) "Discretion is abused when its exercise is arbitrary, whimsical, or capricious."  (*In re Marriage of Battenburg* (1994) 28 Cal.App.4th 1338, 1343.)  We reverse " ' "only if prejudicial error is found after examining the record of the proceedings below." ' "  (*In re Marriage of Lusby* (1998) 64 Cal.App.4th 459, 472.)  "When conducting an abuse of discretion review, appellate courts consider (1) whether the trial court's factual findings are supported by substantial evidence, (2) whether the trial court followed applicable legal principles, and (3) whether the trial court reasonably exercised its discretionary authority—that is, whether any judge reasonably could have made such an order." (*In re Marriage of Hein* (2020) 52 Cal.App.5th 519, 529.)

It is well established that courts will not modify child support "unless there has been a material change of circumstances following the previous determination." (*Usher*, *supra*, 6 Cal.App.5th at p. 357; accord *In re Marriage of Brinkman* (2003) 111 Cal.App.4th 1281, 1292 ["party seeking a modification must present evidence that establishes a change of circumstances"]; *In re Marriage of Laudeman* (2001) 92 Cal.App.4th 1009, 1016 [stipulated agreement to pay support

12

above guideline formula cannot be modified downward unless moving party "presents admissible evidence of changed financial circumstances"].)

"The trial court has broad discretion in deciding whether to modify a spousal support order based upon changed circumstances." (*In re Marriage of Swain* (2018) 21 Cal.App.5th 830, 836 (*Swain*).) In exercising its discretion, the trial court considers the same criteria set forth in Family Code section 4320 as it was obligated to consider in making the initial support order. (*In re Marriage of Shaughnessy* (2006) 139 Cal.App.4th 1225, 1235.) "These factors include the ability of the supporting party to pay; the needs of each party based on the standard of living established during the marriage; the obligations and assets of each party; and the balance of hardships to each party." (*In re Marriage of Terry* (2000) 80 Cal.App.4th 921, 928.) A supported spouse's receipt of additional income in the form of retirement benefits may constitute a change in circumstances. (*In re Marriage of Shimkus* (2016) 244 Cal.App.4th 1262, 1274–1276.)

In exercising its discretion, a trial court must follow established legal principles and base its findings on substantial evidence. (*Swain*, *supra*, 21 Cal.App.5th at p. 836.) If the trial court conforms to these requirements, its order will be upheld whether or not the appellate court agrees with it or would make the same order if it were a trial court. (*Ibid*; *In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 47, fn. omitted.) However, a court abuses its discretion if its findings are wholly unsupported, because a consideration of the evidence is essential to a proper exercise of judicial discretion. (*Swain*, at pp. 836–837.)

III.     **Analysis**

Stephanie contends the trial court erred in ordering Troy to pay $100 per month towards the $305,635.95 child and spousal support arrearage balance owed to Stephanie. She argues that "would take [Troy] 254 years and 7 months to [complete payment of arrearages owed]" which "essentially wiped the $305,635.95 debt clean" as Stephanie will "not be alive for the next 254 years and 7 months [and] [t]his order denies her of this legal right" to obtain child and spousal support arrearages. She contends this amounts to an abuse of discretion and asks that we reverse and "order a new hearing so that a reasonable re-payment plan of these arrearages be made, and/or so that [Stephanie] may file a motion to obtain a judgment for the amount owed."

Our task here is to determine whether the court abused its discretion in concluding that Troy demonstrated a material change in his circumstances. Stephanie, however, does not argue that the trial court erred in reducing Troy's monthly spousal support obligation because there had been no material change in circumstances since the October 17, 2016 judgment to warrant such a reduction. In fact, the extreme change in Troy's income and finances is not even discussed by Stephanie on appeal. Instead she focuses on the fact that repayment of the arrearages at a rate of $100 per month would take 254 years to fulfill, amounting to an abuse of discretion.

We find Stephanie's argument on appeal is not well taken.

First, the trial court did not order $100 monthly payments by Troy towards the arrears. The court ordered $100 monthly payment towards the arrears for child support, spousal support, and unreimbursed medical expenses each, totaling $300 per

14

month towards arrears. This is in addition to the child support of $296 per month.

Second, the trial court made clear multiple times during the hearing that this was an *interim* order. At the hearing held October 29, 2021, the court explained that its October 21, 2021 order "is *based on where we are today*" and that Troy is "trying to clear [his law license issue] up, . . . so he can go and get a job that's actually going to pay him something that is going *to pay you back faster*. That's why I said, *this is what we're working with today. But I expect that to change* once he gets his licenses in order." (Italics added.) The trial court indicated to the parties that this issue shall be revisited when Troy's issue with the California State Bar and Arizona State Bar is resolved, so that Troy "can make a lot more money" and "can get caught up and pay [Stephanie] back." The court indicated to Stephanie that it "expect[s] [the payment amount] to be different once we get this order in line, so he can clear up the [state bar] license issues" and reserved this issue for later determination. Thus, Stephanie is empowered to file a motion to redetermine payment on arrearages owed based upon the trial court's ruling and statements made on the record.

Third, we are precluded from making a determination as to whether the trial court erred by setting the arrearages payment amount to $300 a month, because Stephanie did not include a single I&E declaration filed by her or Troy, nor the reporter's transcript of the October 21, 2021 when the court made its determination. The court noted as early as July 30, 2021 that "child support and spousal support shall be based on the parties' current Income and Expense Declaration[s]." Stephanie's failure to include the I&E declarations in the appellate record is fatal to

15

her appeal.  "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) " 'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and *error must be affirmatively shown.*' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564, italics added.)  It is appellant's burden on appeal to produce a record " 'which overcomes the presumption of validity favoring [the] judgment.' " (*Webman v. Little Co. of Mary Hospital* (1995) 39 Cal.App.4th 592, 595.)  Failure to provide an adequate record requires that the issue be resolved against Stephanie.  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296; see *Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362.)

On this record, we cannot say the court abused its discretion.

## DISPOSITION

We affirm.  No costs are awarded.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

We concur:


GRIMES, J.          VIRAMONTES, J.

16