**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4055
_____

FLINTKOTE COMPANY

v.

AVIVA PLC,
formerly known as Commercial Union Assurance Company
Ltd.,
                                        Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civ. No. 13-cv-00103)
District Judge: Hon. Leonard P. Stark
_____

Argued July 8, 2014
_____

Before: SMITH, VANASKIE, and SHWARTZ, *Circuit
Judges*.

(Filed:  October 9, 2014)

Fred L. Alvarez, Esq. [ARGUED]
Arthur J. McColgan, Esq.
Walker Wilcox Matousek
One North Franklin Street
Suite 3200
Chicago, IL 60606

Thaddeus J. Weaver, Esq.
Dilworth Paxson
704 King Street, Suite 500
P.O. Box 1031
Wilmington, DE 19801
            *Counsel for Appellant*

Louis A. Chiafullo, Esq.  [ARGUED]
Gita F. Rothschild, Esq.
McCarter & English
100 Mulberry Street
Four Gateway Center, 14th Floor
Newark, NJ 07102

Michael P. Kelly, Esq.
Katharine L. Mayer, Esq.
McCarter & English, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
            *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

VANASKIE, *Circuit Judge*.

This case involves an effort by Appellee The Flintkote Company (Flintkote) to compel arbitration on a theory of equitable estoppel against Appellant Aviva PLC (Aviva), a non-signatory to the agreement containing the arbitration clause at issue. Aviva appeals the District Court's order compelling arbitration and denying as moot Aviva's motion to dismiss or transfer. Applying Delaware law, we conclude that Aviva is not equitably bound to arbitrate on these facts. We will therefore reverse the District Court's order insofar as it compels arbitration, and will vacate the order to the extent that it denies as moot the motion to dismiss or transfer.

I.

Flintkote, which is incorporated in Delaware and headquartered in California, was one of the nation's major suppliers of asbestos-based products. From 1980 onward, Flintkote's parent company, Genstar Corporation, hedged against the possibility of asbestos-related bodily injury claims by procuring a vast number of insurance policies from prominent London insurance firms—among them Aviva,[1] one of the largest insurance companies in the world. Within a matter of years, it became apparent that Flintkote's claims under these policies would result in costly and protracted disputes regarding the scope of coverage.

---

[1] Aviva was formerly named Commercial Union Assurance Company Ltd.

On June 19, 1985, Flintkote and several of the London insurers, but not Aviva, entered into a mass settlement known as the Wellington Agreement, which provided a structure for resolution of Flintkote's then-pending and future insurance claims. Specifically, the Wellington Agreement required that disputes over coverage be resolved through a three-step ADR process consisting of open negotiation via mediation, binding arbitration, and an expedited appellate process. (App. 104.) Section XX of the Agreement required the London insurers to make certain payments to Flintkote, and Flintkote was obligated to reimburse the payors, with interest, if it also received those same payments from another insurer. (App. 89–90.)

In 1989, Flintkote and Aviva entered into a separate agreement (the 1989 Agreement), which in substance was largely similar to the Wellington Agreement, including as to reimbursement for claims also paid by other insurers. Crucial to this case, however, is the fact that the 1989 Agreement contained a clause explicitly reserving each party's right to resolve any disputes arising under that Agreement through litigation:

> Flintkote and [Aviva] shall resolve through litigation any disputed issues to this Agreement, and nothing contained in any provision of this Agreement or in any provision of the Wellington Agreement, as applied to this Agreement, shall require [Aviva] and Flintkote to resolve any disputes that may arise between them relating to this Agreement

4

through ADR under the Wellington Agreement.

(App. 137.)

Flintkote filed for bankruptcy in 2004, resulting in a case which remains pending in the United States Bankruptcy Court for the District of Delaware. *See In re The Flintkote Co. & Flintkote Mines, Ltd.*, No. 04-11300 (Bankr. D. Del.). In 2006, invoking the Wellington Agreement, Flintkote initiated a large-scale coverage-related mediation with the London insurers. The Mediation Agreement, which itself contained no reference to the Wellington Agreement, provided that the parties' conduct and statements made in the course of mediation were to be confidential.[2] (App. 438–39.)

[2] Specifically, the Mediation Agreement stated:

All offers, promises, conduct, and statements, whether oral or written, made in the course of the mediation by the parties, their agents, employees, experts and attorneys, and the mediator are confidential. Such offers, promises, conduct, and statements will not be disclosed to third parties, except persons associated with the parties in the mediation process and persons or entities to whom a party has a legal or contractual obligation to report, and are privileged and inadmissible for any purpose . . . .

Aviva, although not contractually obligated to participate, opted to join the mediation in an effort to resolve Flintkote's pending claims for coverage.

Throughout the subsequent proceedings, Aviva and the other London insurers were jointly represented by the same counsel, Attorney Fred Alvarez. In a letter dated August 4, 2006, Alvarez requested that Flintkote "participat[e] in submitting a joint motion to lift the automatic bankruptcy stay in Flintkote's bankruptcy proceeding," citing a concern that the stay might prevent Aviva and the other London insurers from "fully present[ing] their defenses and claims in the Wellington ADR." (App. 149.) Yet for reasons unknown, no such motion was filed at that time. As described below, the automatic stay remained in place until early 2013.

During the course of the ensuing mediation, Flintkote reached individual settlements with some of the London insurers, but not with Aviva. On July 16, 2012, counsel for Aviva and the remaining other London insurers wrote to Flintkote seeking "reimbursement or off-set with respect to prior payments" as well as interest under Section XX of the Wellington Agreement. (App. 153.) The July 16 letter further stated that "[a]bsent resolution of the issues in the pending Wellington ADR, [the London insurers] intend[ed] to include the [reimbursement] issue[] in the Wellington Arbitration." (*Id.*) Flintkote took no action on the demand.

Two months after the July 16 letter, the parties began to exchange draft arbitration agreements. The drafts contained

(App. 438.)

6

standard reservations stating that they were provided only for "discussion purposes," were subject to client review and approval, and were provided "without prejudice" to the parties' rights under the applicable accords. (App. 444–47). The last draft arbitration agreement was sent to Flintkote by Alvarez on behalf of Aviva and the London insurers on December 14, 2012.

On December 24, 2012, Aviva, now acting separately from the remaining London insurers, moved in the Delaware Bankruptcy Court to lift the automatic stay imposed under 11 U.S.C. § 362(d) "to allow it to pursue a declaratory judgment action in the United States District Court for the Northern District of California to determine the scope of the insurance coverage available for [Flintkote] under certain insurance policies" Aviva had issued. (App. 321.) On January 17, 2013, before the Bankruptcy Court ruled on Aviva's motion, Flintkote filed the instant declaratory judgment action against Aviva in the District of Delaware.

On February 4, the Bankruptcy Court granted Aviva's motion to lift the stay, but delayed its effective date until February 19, thus preventing Aviva from filing its complaint in California until that date. On February 18, as plaintiff in the District of Delaware, Flintkote moved to compel arbitration pursuant to Section 4 of the Federal Arbitration Act (FAA), 9 U.S.C. § 4. The next day, Aviva filed its own declaratory judgment action in the Northern District of California.

On March 1, Aviva moved to dismiss Flintkote's action or transfer it to California. On March 13, Flintkote filed a motion to dismiss the Aviva action initiated in California, or have it transferred to Delaware. On May 14,

the California court stayed Aviva's action pending the Delaware court's resolution of Aviva's motion to dismiss or transfer Flintkote's action.

In a memorandum and order filed September 30, 2013, the Delaware District Court granted Flintkote's motion to compel arbitration, concluding that Aviva was equitably estopped from avoiding arbitration by virtue of its participation in the lengthy mediation process. The District Court denied as moot Aviva's motion to dismiss or transfer. Aviva filed a timely notice of appeal. On November 21, 2013, in light of the Delaware District Court's order compelling arbitration, the California District Court dismissed Aviva's suit without prejudice. *See Aviva PLC v. Flintkote Co.*, No. 13-00711, 2013 WL 6139748 (N.D. Cal. Nov. 21, 2013).

II.

The District Court had jurisdiction in this case under 28 U.S.C. § 1332(a) and 9 U.S.C. § 4. We have jurisdiction under 28 U.S.C. § 1291 and 9 U.S.C. § 16(a)(3).

We exercise plenary review over the District Court's order on a motion to compel arbitration. *Quilloin v. Tenet Healthsystem Phila., Inc.*, 673 F.3d 221, 228 (3d Cir. 2012). In assessing the motion to compel arbitration itself, we apply the standard for summary judgment in Rule 56(a), under which the motion should be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the facts and draw inferences in the light most favorable to the nonmoving party. *Quilloin*, 673 F.3d at 228. We apply this standard "because the district court's

order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 528 (3d Cir. 2009) (quotation marks and citations omitted).

## III.

With its enactment of the FAA, Congress "expressed a strong federal policy in favor of resolving disputes through arbitration." *Id.* at 522. Even in light of the FAA, however, we have recognized that "[a]rbitration is strictly a matter of contract. If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999). Thus, in deciding whether a party may be compelled to arbitrate under the FAA, we first consider "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement."[3] *Century Indem.*, 584 F.3d at 527. Here, it is undisputed that no express agreement to arbitrate existed between Flintkote and Aviva.

Instead, Flintkote relies upon our recurring admonition that a party, despite being a non-signatory to an arbitration agreement, may be equitably bound to arbitrate "under traditional principles of contract and agency law." *E.I.*

---

[3] Although a presumption in favor of arbitration exists, that presumption applies only when interpreting the scope of an arbitration agreement, and not when deciding whether a valid agreement exists. *Century Indem.*, 584 F.3d at 527.

*DuPont De Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194–95 (3d Cir. 2001). Such principles, which by the Supreme Court's recent measure include "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel," *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (quotation marks omitted), all are founded on the notion that a contract may sometimes be equitably enforced by or against even nonparties. In the wake of *Arthur Andersen*, however, we must expressly consider "whether the relevant state contract law recognizes [the particular principle] as a ground for enforcing contracts against third parties." *Id.* at 632.

Neither the District Court's opinion in this case nor the parties' briefing addresses with particularity which state's law governs Flintkote's motion to compel arbitration.[4] At various times throughout their briefing on Flintkote's motion, however, both parties cite to either Delaware case law or federal opinions interpreting Delaware law. (*See* Appellant's Br. at 22, 33–34; Appellee's Br. at 23–24, 34; Appellant's Reply Br. at 8; App. 65, 426, 558.) And the District Court ultimately concluded that Aviva was equitably bound to arbitrate under two distinct theories of estoppel, both of which arise under Delaware law: first, that Aviva "exploited" the Wellington agreement to secure benefits to which it would otherwise not have been entitled, *E.I. DuPont*, 269 F.3d at 199 (addressing a diversity case implicating Delaware law);

---

[4] We recognize that the parties are at odds as to whether the substance of the underlying insurance dispute should be decided under California or Delaware law, and we take no position on that question.

10

and second, that Aviva's participation in mediation caused Flintkote to "change [its] position to [its] detriment[,]" *Great Am. Credit Corp. v. Wilmington Hous. Auth.*, 680 F. Supp. 131, 134 (D. Del. 1988) (quotation marks and citations omitted) (applying Delaware law). (App. 12–14.) For these reasons, and because neither party presented a timely argument that Flintkote's motion is governed by the law of any jurisdiction other than the forum state, we too will apply the law of Delaware.[5]

---

[5] Aviva suggested for the first time at oral argument that California law applies to the equitable estoppel analysis. Because Aviva did not make that argument in its briefing or before the District Court, we consider it waived. *See Griswold v. Coventry First LLC*, 762 F.3d 264, 272 n.6 (3d Cir. 2014) (noting that a "footnote in [a] reply brief" was "insufficient to raise a choice-of-law issue on appeal").

In the alternative, we note that California law is materially similar to Delaware law on the basic principles of equitable estoppel. *See Steinhart v. Cnty. of Los Angeles*, 47 Cal. 4th 1298, 1315 (Cal. 2010) (recognizing doctrine of equitable estoppel); *NAMA Holdings, LLC v. Related World Mkt. Ctr.*, 922 A.2d 417, 431–33 (Del. Ch. 2007) (same); *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209 (Cal. App. Ct. 2009) (compelling arbitration on the basis of equitable estoppel); *Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, No. 2037-N, 2006 WL 2473665, *4–6 (Del. Ch. Aug. 22, 2006) (same); *In re Marriage of Brinkman*, 4 Cal. Rptr. 3d 722, 728 (Cal. Ct. App. 2003) (requiring proof of equitable estoppel by clear and convincing evidence); *Emp'rs' Liab. Assurance Corp. v. Madric*, 183 A.2d 182, 188 (Del. 1962) (same).

11

Delaware law recognizes the doctrine of equitable estoppel, *see NAMA Holdings, LLC v. Related World Mkt. Ctr.*, 922 A.2d 417, 431–33 (Del. Ch. 2007), and imposes the burden of producing clear and convincing proof on the party asserting estoppel, *see Emp'rs' Liab. Assurance Corp. v. Madric*, 183 A.2d 182, 188 (Del. 1962). "An estoppel may not rest upon an inference that is merely one of several possible inferences." *Id.* We now consider Aviva's argument that Flintkote failed to justify application of equitable estoppel by clear and convincing evidence.

## A.

As noted above, the first basis for the District Court's opinion was what we have termed the "knowing exploitation" theory of equitable estoppel. We first addressed that principle in *E.I. DuPont*, where, drawing on the opinions of other federal circuits, we explained that a non-signatory is equitably precluded from "embracing a contract, and then turning its back on the portions of the contract, such as an arbitration clause, that it finds distasteful." 269 F.3d at 200.[6]

Thus, seeing no appreciable conflict of laws, we opt to apply the law of Delaware.

[6] Delaware courts have since cited that portion of the *E.I. DuPont* opinion favorably on several occasions. *See, e.g.*, *Aveta Inc. v. Cavallieri*, 23 A.3d 157, 182 (Del. Ch. 2010); *NAMA Holdings*, 922 A.2d at 430–32 & nn.25–27, 35; *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 218 n.155 (Del. Ch. 2006). We thus have no concern that our continuing validation of *E.I. DuPont* constitutes an

Delaware courts have identified several circumstances under which a non-signatory may "embrace" a contract: (1) where the non-signatory "direct[ly], rather than indirect[ly], benefit[ted] from the [agreement] during the course of the agreement's performance[,]" *NAMA Holdings*, 922 A.2d at 432; (2) where the non-signatory "'consistently maintain[s] that other provisions of the same contract should be enforced to benefit him[,]'" *Aveta Inc.*, 23 A.3d at 182 (quoting *E.I. DuPont*, 269 F.3d at 200); or (3) where the non-signatory "'sue[s] to enforce the provisions of a contract that it likes, while simultaneously disclaiming the provisions that it does not[,]'" *id.* (quoting *Town of Smyrna v. Kent Cnty. Levy Court,* No. 244-K, 2004 WL 2671745, at \*4 (Del. Ch. Nov. 9, 2004)).[7] Even so, a court must "proceed with a good deal of

application of federal common law which would be precluded under *Arthur Andersen*. *See Griswold*, 762 F.3d at 272 n.6 ("Because we are satisfied that the Supreme Court's decision in *Arthur Andersen* did not overrule Third Circuit decisions consistent with relevant state law contract principles, we may rely on our prior decisions so long as they do not conflict with [the applicable] state law principles.").

[7] One might argue that we announced a more restrictive rule in *Bouriez v. Carnegie Mellon University*, 359 F.3d 292, 295 (3d Cir. 2004), when we stated that "[a] person may also be equitably estopped from challenging an agreement that includes an arbitration clause when that person embraces the agreement *and* directly benefits from it." (emphasis added) (citing *E.I. DuPont*, 269 F.3d at 199–200). But *Bouriez* has never been cited approvingly by a Delaware court, and in any event did not purport to apply Delaware law.

caution . . . lest nuanced concepts of equity be allowed to override established legal principles of contract formation." *NAMA Holdings*, 922 A.2d at 433 n.35.

Our review of the record leads us to conclude that Flintkote has failed to adduce clear and convincing evidence that Aviva "embraced" the Wellington Agreement in any meaningful sense. First, the mediation in which Aviva participated was governed not by the Wellington Agreement, but by the Mediation Agreement—a document which (1) made no reference to the Wellington Agreement, (2) contained no arbitration provision, and (3) was structured on its own terms as a completely confidential procedure. To participate in the mediation, Aviva was not required to sign the Wellington Agreement or forfeit any rights under the 1989 Agreement. In sum, there is simply no evidence that Aviva embraced the Wellington Agreement when it opted to participate in mediation alongside the other London insurers.[8]

---

Thus, in light of *Arthur Andersen*, we will not consider it here.

[8] Flintkote argues that were it not for the Wellington Agreement, the mediation at issue would simply never have occurred, thus precluding Aviva from delaying the resolution of Flintkote's insurance claims against it. To the extent that this can be considered a "benefit" at all, we consider it to be of the "indirect" sort that provides no basis for equitable estoppel. *See NAMA Holdings*, 922 A.2d at 432 (citing *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995)).

Second, we do not view the July 16 letter that Attorney Alvarez sent Flintkote, in which he noted an ostensible right to reimbursement under Section XX of the Wellington Agreement, as a basis for application of equitable estoppel. (App. 153.) This single invocation of the Wellington Agreement, which appears to be an isolated event in the six-year course of the mediation at issue, did not result in any direct benefit to Aviva. The request likewise falls well short of "consistently" seeking the benefit of "other provisions of the same contract[,]" or actually suing to enforce that clause. *See Aveta Inc.*, 23 A.3d at 182. As a final point, we note that Aviva was entitled to reimbursement and interest under a similar provision in the 1989 Agreement, meaning that any reimbursement ultimately obtained by Aviva would have stemmed primarily, if not entirely, from the 1989 Agreement, not the Wellington Agreement.

Finally, Flintkote attempts to justify the District Court's holding by noting the August 4, 2006 letter in which Attorney Alvarez requested that Flintkote join in filing a motion to lift the Bankruptcy Court's automatic stay. (App. 149.) No such joint motion was ever filed, and the automatic stay remained in place until being lifted, over Flintkote's objection, to allow Aviva to file suit in the Northern District of California over six years later. Because the request in the August 4, 2006 letter was not an attempt to invoke any right under the Wellington Agreement, and because Aviva ultimately received no direct benefit as a result of the August 4, 2006 letter, we conclude that it does not provide a basis for equitable estoppel.

In sum, the record does not contain clear and convincing evidence that Aviva "embraced" the Wellington Agreement by directly benefitting from that Agreement,

consistently seeking to enforce that Agreement's provisions for Aviva's benefit, or suing to enforce rights ostensibly arising under that Agreement. The District Court thus erred in granting Flintkote's motion to compel arbitration on this basis.

B.

Delaware courts have also recognized that the doctrine of equitable estoppel may apply "when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment." *Wilson v. Am. Ins. Co.*, 209 A.2d 902, 903–04 (Del. 1965). "The party claiming estoppel must demonstrate that: (i) they lacked knowledge or the means of obtaining knowledge of the truth of the facts in question; (ii) they reasonably relied on the conduct of the party against whom estoppel is claimed; and (iii) they suffered a prejudicial change of position as a result of their reliance." *Nevins v. Bryan*, 885 A.2d 233, 249 (Del. Ch. 2005).

Here, the District Court found that Flintkote had reasonably relied on Aviva's participation in the mediation process as an assurance that Aviva had disclaimed its right to litigation under the 1989 Agreement and instead consented to participation in the Wellington process, up to and including binding arbitration. This purportedly operated to Flintkote's detriment by delaying resolution of the underlying insurance claims at issue.

Even assuming that such delay might constitute a detriment under the circumstances, we conclude that Flintkote has still failed to establish two of the three factors described in *Nevins*. First, given that Flintkote was a signatory to the

1989 Agreement, which contained an express litigation provision, Flintkote was on actual notice of "the truth of the facts in question," i.e., that Aviva had negotiated for and specifically reserved the right to resolve all disputed issues through litigation. *Cf. Great Am. Credit Corp.*, 680 F. Supp. at 134, 138 (declining to apply equitable estoppel where a contractor should have known of a statutory provision precluding payment to it if it failed to pay its subcontractors). Second, to the extent that Flintkote relied on Aviva's participation in mediation as an unspoken waiver of its rights under the 1989 Agreement, such reliance was unreasonable. The Mediation Agreement contains no language to suggest that it displaced the 1989 Agreement's litigation provision, makes no reference to the Wellington Agreement, and does not contemplate a resort to arbitration in the event of failure to reach a negotiated disposition. Flintkote's mistaken assumption to the contrary could have been clarified with even a cursory inquiry at any point during the six-year mediation, and thus provides no basis for equitable estoppel.[9]

For these reasons, Flintkote could not have reasonably relied on Aviva's participation in mediation as a basis to believe binding arbitration would occur if the mediation failed. We therefore conclude that the District Court erred in applying equitable estoppel under a theory of detrimental reliance to compel Aviva to arbitrate.

---

[9] For the reasons already described in Part III.A, we attribute little significance to Aviva's July 16 letter identifying issues that might be raised in arbitration. Similarly, the draft arbitration agreements exchanged by the parties contained disclaimers that they were for discussion purposes only.

IV.

Finally, we find no merit in Flintkote's auxiliary arguments based on waiver and implied-in-fact contract. Under Delaware law, "the standards for demonstrating waiver—the voluntary and intentional relinquishment of a known right—are quite exacting." *Amirsaleh v. Bd. of Trade of City of N.Y., Inc.,* 27 A.3d 522, 529 (Del. 2011) (quotation marks and citations omitted). As explained earlier, we see no conduct on Aviva's part that, to a reasonable observer, would have conveyed an intent to waive or otherwise forgo its rights under the 1989 Agreement. And it is hornbook common law that courts will not infer an implied-in-fact contract where an express contractual provision already exists on the same point, as it does here under the 1989 Agreement. *See Williston on Contracts*, § 1:5.

V.

Because we will reverse the District Court's order to the extent that it granted Flintkote's motion to compel arbitration, Aviva's motion to dismiss or transfer is no longer moot. We will therefore vacate the District Court's order insofar as it addressed that motion. Because the District Court has not yet passed on the merits of the parties' arguments as to venue, we express no opinion on the matter and leave it for resolution upon remand.

VI.

For the foregoing reasons, we will reverse the District Court's order granting Flintkote's motion to compel arbitration, vacate the District Court's order denying as moot

Aviva's motion to dismiss or transfer, and remand for proceedings consistent with this Opinion.