**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1477
_____

DONALD MADDY; KURT FREDERICK; FREDERICK R. SHELLHAMMER, III;
FRANK MICHIENZI; ANTHONY CHELPATY; WILLIAM MADDEN; STEVEN LE
BLANC; PHILLIP ERIC BENSON; JEFFREY SCOTT WILKERSON; JEFFREY
NAVARETTE; LANCE BERGMANN; BRADLEY PALMER; THOMAS KISS,
Individually and on behalf of all others similarly situated

v.

GENERAL ELECTRIC COMPANY, a New York corporation,

Appellant
_____

Appeal from the United States District Court
for the District of New Jersey
(No. 1:14-cv-00490)
District Judge:  Honorable Joseph E. Irenas

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 12, 2015

Before:  CHAGARES, RENDELL and BARRY, <u>Circuit Judges</u>.

(Filed December 3, 2015)
_____

OPINION[*]
_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Defendant General Electric Company ("General Electric" or "GE") appeals the District Court's denial of a motion to compel arbitration. At issue in this case is whether plaintiffs Jesse Guerra and Jeremy Gifford agreed to arbitrate their wage and hour claims against their employer General Electric. For the reasons that follow, we will affirm the District Court's order.

I.

We write solely for the parties and therefore recite only the facts necessary to our disposition. Plaintiffs Jesse Guerra and Jeremy Gifford are part of a conditionally certified collective action lawsuit against General Electric that seeks unpaid overtime under various state and federal laws, including the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201, et seq. The class of plaintiffs in this lawsuit are technicians who service and repair appliances in residential customer homes for General Electric Appliances ("GEA"). They are paid an hourly wage, plus overtime for hours worked in excess of 40 hours per week.

Both Guerra and Gifford work in non-union residential "zones," in which General Electric has implemented a mandatory alternative dispute resolution program (the "Solutions" program) that applies to "Covered Employees" for certain "Covered Claims."[1] In 2009, both Guerra and Gifford (who started working for GEA in 2000 and 2002, respectively) signed acknowledgment forms regarding the Solutions program. The acknowledgement forms state that the employee "ha[s] been informed that by continuing

_____

[1] The parties do not dispute that the wage and hour claims at issue in this lawsuit fall within the Solutions program's definition of "Covered Claims."

. . . employment with the Company after June 30, 2009, [s/he] will be bound by the terms of the Solution[s] procedure," and that Covered Claims "must be pursued through the Solutions Procedure" rather than "in court, or on a class action basis either in court or through Solutions." Appendix ("App.") Vol. 2 at 135a, 137a. However, the parties dispute whether the acknowledgment forms reference a 2008 version or a 2009 version of the Solutions program — a critical distinction as the 2008 and 2009 Solutions programs provide different definitions for "Covered Employees."

Both the 2008 and 2009 Solutions programs define "Covered Employees" as "U.S.-based . . . current, or former employees who left the Company after the effective date of Solutions, not represented by a labor union who are or were employed by the Company . . . as identified by your business or component in Appendix A." App. Vol. 2 at 107a, 177a. But the two Solutions programs diverge when identifying employees in Appendix A. In the 2008 program, Appendix A includes only "Executive Band and above employees in all GE businesses," which the parties agree do not include Guerra or Gifford. App. Vol. 2 at 127a. However, Appendix A in the 2009 Solutions program includes, in addition to Executive Band and above employees, "[a]ll GE Consumer & Industrial employees in Senior Professional band positions and below who are classified by the Company as exempt, and non-exempt salaried employees." App. Vol. 2 at 197a-198a (emphasis added). The parties disagree over whether Guerra and Gifford, who are paid hourly, are "non-exempt salaried employees" under the terms of the 2009 program.

Before the District Court, General Electric filed a motion to compel arbitration of Guerra and Gifford's claims. General Electric argued that Guerra and Gifford, who had

3

signed acknowledgment forms and continued their employment thereafter, were subject to mandatory arbitration pursuant to the 2009 Solutions program. The District Court denied the motion, holding that (1) the signed acknowledgment forms failed to commit Guerra and Gifford to mandatory binding arbitration of their claims, as the forms lacked "clear language of assent" and were ambiguous as to which version of the Solutions program Guerra and Gifford received; and (2) even if Guerra and Gifford agreed to be bound by the 2009 Solutions program, they were not "Covered Employees" required to arbitrate their claims. General Electric timely appealed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(B) to review an order denying a petition for arbitration.

We exercise plenary review over the District Court's order denying GE's motion to compel arbitration. Flintkote Co. v. Aviva PLC, 769 F.3d 215, 219 (3d Cir. 2014). If it is apparent, based on the "face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." Guidotti v. Legal Helpers Debt Resolution, LLC, 716 F.3d 764, 776 (3d Cir. 2013) (quotation marks omitted). But if the motion to compel does not "establish on its face that the parties agreed to arbitrate," id. at 774, then the Court is to use the summary judgment standard under Rule 56(a), in which "the motion should be granted where 'there is no genuine dispute as to any material fact and the movant is

4

entitled to judgment as a matter of law,'" Flintkote, 769 F.3d at 219 (quoting Fed. R. Civ. P. 56(a)). Exercising de novo review under this standard, we view the facts and draw inferences in the light most favorable to the non-moving party. Flintkote, 769 F.3d at 219.

III.

A.

In denying General Electric's motion to compel arbitration, the District Court held that Guerra and Gifford did not enter into a valid agreement to arbitrate when they signed the Solutions acknowledgment forms. Under Texas law, a valid agreement to arbitrate exists if an employee received notice of the employer's arbitration policy, and the employee accepted it by, for example, continuing employment after receiving notice.[2] See In re Dallas Peterbilt, Ltd., L.L.P., 196 S.W.3d 161, 162-63 (Tex. 2006). Here, Guerra and Gifford received and signed acknowledgment forms that they had "received and reviewed the Solutions training and [had] been provided with an electronic copy of the full Solutions procedure document" containing the arbitration policy. App. Vol. 2 at 135a, 137a. After signing the forms, Guerra and Gifford continued in their employment.

Ordinarily, signing an acknowledgment form on an arbitration policy and continuing employment constitutes a valid agreement to arbitrate under Texas law. See In re Dallas Peterbilt, 196 S.W.3d at 163. But the acknowledgment forms here do not show that Guerra and Gifford received notice of the arbitration policy contained in the

_____

[2] The District Court applied Texas law to the question of contract formation, as Guerra and Gifford worked and resided in Texas. The parties do not challenge the District Court's application of Texas law.

5

2009 Solutions program. There is ambiguity as to which version of the Solutions Program Guerra and Gifford were trained on and received a procedural manual for — the 2008 Solutions program, which covers only "Executive Band and above employees," or the 2009 Solutions program, which covers a wider range of "salaried employees." General Electric's motion is therefore not clear on its face that the parties agreed to arbitrate, and the Court therefore cannot resolve the motion to compel arbitration under a Rule 12(b)(6) standard. Instead, the Court must analyze evidence of the parties' agreement under the Rule 56(a) summary judgment standard and view the facts and draw inferences in the light most favorable to the non-moving party. Guidotti, 716 F.3d at 774.

Under the Rule 56(a) standard, the District Court was correct to deny General Electric's motion to compel arbitration. The acknowledgment forms signed by Guerra and Gifford indicate that they had been "provided with an electronic copy of the full Solutions procedure document," and that the terms of the arbitration program were "detailed more fully" in that document. App. Vol. 2 at 135a, 137a. General Electric argues that the acknowledgment forms were for the 2009 Solutions program, and points to a declaration from Eric Leef, a human resources employee, stating that Gifford and Guerra "would have received and been trained on" the 2009 Solutions program. App. Vol. 2 at 140a.

But whether the document provided to Guerra and Gifford was the 2008 or 2009 Solutions procedure document is a disputed material fact. Although General Electric attached the 2009 Solutions program to the Leef Declaration, General Electric attached the 2008 Solutions program to another declaration by Melissa Lee, a human resources

6

employee. In that declaration, Lee stated that, "[e]ffective July 1, 2009, GE introduced 'Solutions,' a four-step dispute resolution program that culminates with mandatory binding arbitration," and that a "true and correct copy of the Solutions program is attached hereto." App. Vol. 2 at 101a. The Solutions program attached to that declaration was the 2008 Solutions program. As the District Court noted, General Electric had "originally submitted the 2008 version" with its motion to compel arbitration, and thus "it is not a stretch to imagine that Gifford and Guerra may not have received the 2009 version prior to signing the Acknowledgment forms." Maddy v. Gen. Elec. Co., 80 F. Supp. 3d 544, 550 n.5 (D.N.J. 2015).

The parties have not produced evidence, other than those conflicting declarations, indicating which Solutions procedure document was electronically provided to Guerra and Gifford. Viewing these facts and drawing inferences in favor of Guerra and Gifford, leads us to affirm denial of General Electric's motion to compel.

B.

Even if Guerra and Gifford had received copies of and were trained on the 2009 Solutions procedure, they are not "Covered Employees" subject to arbitration under the terms of the 2009 Solutions program. On this point, the District Court held the term "non-exempt salaried employees" to be ambiguous in context of the Solutions program, and applied state law contract principles to construe the term against General Electric as the drafter.[3]

---

[3] The District Court applied New York law to questions of contract interpretation as the Solutions Program contained a "Governing Law" provision for New York law to be

7

The District Court noted that, ordinarily, the term "salaried employees" plainly and unambiguously excludes hourly paid employees. See Maddy, 80 F. Supp. 3d at 551-52; 29 C.F.R. § 541.602 ("An employee will be considered to be paid on a 'salary basis' within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."). However, despite the definition of "salaried employees" in the FLSA and elsewhere, the term is ambiguous in the context of the 2009 Solutions program. The 2009 Solutions program provides that "Covered Employees" include "GE Consumer & Industrial employees . . . who are classified by the Company as exempt, and non-exempt salaried employees." App. Vol. 2 at 197a-198a (emphases added). Thus, there is ambiguity as to which employees are "classified" by General Electric as "non-exempt salaried employees."

General Electric contends that hourly paid service technicians are internally designated as "non-exempt salaried employees" for payroll/benefits purposes, and that this classification applies to "non-exempt salaried employees" in the Solutions program.[4] However, the 2009 Solutions program does not mention this internal designation, and

applied. See Maddy, 80 F. Supp. 3d at 551. Under New York law, "[i]n cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language." Jacobson v. Sassower, 489 N.E.2d 1283, 1284 (N.Y. 1985).

[4] To support this assertion, General Electric submitted a second declaration from Melissa Lee stating that "[s]ervice technicians are designated as 'non-exempt salaried employees' within GE's internal payroll system for benefits purposes only, i.e., so that they receive the same benefits as salaried employees." App. Vol. 2 at 206a.

8

there is no other evidence that hourly paid service technicians were considered salaried

employees apart from a limited payroll/benefits context.  As the District Court noted:

> Defendant relies on assertions in the Lee and Leef Declarations that GE's
> internal payroll system designates service technicians as salaried for benefits
> purposes, and that service technicians were trained on Solutions.  Yet there is no
> evidence that a designation "for benefits purposes only" also extends to GE's
> larger "classification" for the purposes of the Solutions program.  Defendant alone
> controlled the language of Solutions and there is simply no indication from the
> Solutions program documents that service technicians like Gifford and Guerra fall
> within Defendant's purported definition of salaried.

Maddy, 80 F. Supp. 3d at 552.

Yet General Electric argues that these ambiguities in the 2009 Solutions program

should be resolved in favor of arbitration.  General Electric points to Moses H. Cone

Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) for the

proposition that "as a matter of federal law, any doubts concerning the scope of arbitrable

issues should be resolved in favor of arbitration, whether the problem at hand is the

construction of the contract language itself or an allegation of waiver, delay, or a like

defense to arbitrability."

Contrary to General Electric's assertion, the District Court was correct to construe

the ambiguity of "non-exempt salaried employees" against General Electric as the drafter.

As we have previously stated, "before a party to a lawsuit can be ordered to arbitrate and

thus be deprived of a day in court, there should be an express, unequivocal agreement to

that effect."  Guidotti, 716 F.3d at 773 (alteration and quotation marks omitted); see also

Rite Aid of Pennsylvania, Inc. v. United Food & Commercial Workers Union, Local

1776, 595 F.3d 128, 131-32 (3d Cir. 2010) ("Unless the parties clearly provide otherwise,

9

the courts, not the arbitrators, are tasked with interpreting agreements in order to determine whether the parties have indeed agreed to arbitrate disputes whose arbitrability is contested.").

Here, the parties do not dispute that the claims at issue would fall within the scope of the arbitration clause if the parties actually agreed to arbitrate their claims. But there was no express, unequivocal agreement by the parties to arbitrate. Construing "salaried employees" to include Guerra and Gifford would require us to ignore the ordinary definition of that term, and instead apply a classification used by General Electric "for benefits purposes only" to the Solutions program. Instead, the ambiguity as to whether Guerra and Gifford agreed to arbitrate, if they did receive notice of the 2009 Solutions program, should be resolved against General Electric, and, therefore, Guerra and Gifford should not be deemed to be "Covered Employees" based on the terms of the 2009 Solutions program. Thus, they did not agree to arbitrate their wage and hour disputes.

IV.

For the foregoing reasons, we will affirm the District Court's denial of General Electric Company's motion to compel arbitration.