**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2315
_____

In re: FBI WIND DOWN INC., f/k/a Furniture Brands International, Inc., *et al.*,

Debtors
_____

FBI WIND DOWN, INC. LIQUIDATING TRUST,
by and through Alan D. Halperin, as Liquidating Trustee

v.

HERITAGE HOME GROUP, LLC, f/k/a FBN Acquisiton Holdings, LLC; KPS
CAPITAL PARTNERS, LP; KPS SPECIAL SITUATIONS FUND III LP; KPS
SPECIAL SITUATIONS FUND III (A), LP; KPS SPECIAL SITUATIONS FUND III
SUPPLEMENTAL, LP; KPS SPECIAL SITUATIONS FUND III (SUPPLEMENTAL –
AIV), LP; KPS OFFSHORE INVESTORS, LTD.,
Appellants
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-16-cv-00834)
District Judge: Honorable Sue L. Robinson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on January 18, 2018

Before:  AMBRO, RESTREPO, and FUENTES, *Circuit Judges*

(Opinion filed: July 27, 2018)

_____

OPINION*

_____


FUENTES, *Circuit Judge.*

This case concerns the arbitrability of certain claims arising in a bankruptcy proceeding.  The Defendant-Appellants, hereafter referred to as "Heritage Home Group," seek review of the District Court's order affirming an order of the Bankruptcy Court determining the claims to fall outside the scope of the relevant arbitration provision.  For the following reasons, we will affirm the order of the District Court.

I.

Because we write only for the parties, we set forth only those facts necessary to resolving this appeal.

The entity now known as Plaintiff-Appellant FBI Wind Down, Inc. entered bankruptcy proceedings under chapter 11.  Under an asset purchase agreement dated October 2, 2013 (the "Agreement"), FBI Wind Down sold substantially all of its assets to Heritage Home Group.  This agreement allowed FBI Wind Down to retain its "cash and cash equivalents," due to both income and liabilities that would be incurred before the actual sale but would not be recognized by the cash management systems of the assets

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

until after the sale closed.[1]  To account for this, the Agreement, as amended by Amendment No. 2, established an adjustment mechanism to calculate the post-closing totals such that the aggregate purchase price would remain fixed at $280,000,000. Amendment No. 2 also established an adjustment mechanism to allow for post-closing calculation of accounts payable obligations to maintain that fixed price.

Amendment No. 2 to the Agreement contains two identical arbitration provisions, one applying to the section regarding cash and cash equivalents and another applying to the section regarding accounts payable obligations.  This provision reads:

> To the extent the parties are unable to come to a final resolution of the foregoing adjustments, the parties shall submit to a mutually acceptable "big four" accounting firm for resolution any disputed items in accordance with the procedures (including allocations of fees and expenses) provided by such accounting firm.[2]

Amendment No. 2 was executed on November 22, 2013.  That day, the Bankruptcy Court approved the sale and the terms of the Agreement, issuing an order to that effect.  This order provided that "[t]he Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the [Agreement], all amendments thereto . . . and to adjudicate if necessary, any and all disputes concerning or relating in any way to the Sale or Transaction."[3]

Unable to resolve the post-closing adjustments with Heritage Home Group, FBI Wind Down commenced an adversary proceeding in the Bankruptcy Court to resolve

---

[1] JA-3.
[2] JA-416–JA-417.
[3] JA-470.

several disputes. The essence of these disputes centers on what constitutes "cash and cash equivalents" and "accounts payable obligations" under the Agreement. Heritage Home Group argues that the definition of these terms is a "disputed item" under the meaning of Amendment No. 2's arbitration provisions. FBI Wind Down contends that defining these terms is an act of contract interpretation and therefore falls within the retained jurisdiction of the Bankruptcy Court. FBI Wind Down concedes that arbitration may be required, but the issues presented are a threshold legal question for the decision of a court. The Bankruptcy Court agreed with FBI Wind Down, the District Court affirmed the order to that effect, and this appeal followed.

## II.

We review the District Court's order *de novo*.[4] Where, as here, "it is apparent, based on the face of a complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay."[5] Under that standard, the movant prevails "only if, accepting all factual allegations as true and construing the complaint in the light most favorable to the plaintiff, we determine that the plaintiff is not entitled to relief under any reasonable reading of the complaint."[6]

## III.

---

[4] *See Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 219 (3d Cir. 2014) ("We exercise plenary review over the District Court's order on a motion to compel arbitration.").

[5] *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotation marks and citation omitted).

[6] *Id.* (quoting *McGovern v. City of Phila.*, 554 F.3d 114, 115 (3d Cir. 2009)).

The parties agree that the terms of the arbitration provisions in Amendment No. 2 are unambiguous, but they disagree what exactly their plain meaning is. Because the Agreement and Amendment No. 2 express a clear intent to limit arbitration to disputes about accounting items, we will affirm the District Court.

On its face, the arbitration provision of the Agreement is limited by its application to "disputed items" versus "disputes." The District Court, looking at the Bankruptcy Court's decision, determined that "disputed items" referred to accounting calculations. The Bankruptcy Court recognized that "because 'item' is a term of art in accounting, 'any disputed item,' as used in the Arbtiration Clause, was a limiting term that restricted the scope of the Arbitration Clause to disputes over 'accounting items.'"[7] Reviewing this conclusion *de novo*, it is correct. It flows from the clear terms of the Agreement, specifically Amendment No. 2, and from the intent expressed by those terms.

Bringing all disputes, including threshold issues of contract interpretation, within the scope of the arbitration provisions would have been as simple as agreeing to arbitrate "disputes," rather than "disputed items." Heritage Home Group argues that the plain meaning of "items" requires the inclusion of matters of contract interpretation. This would essentially nullify Section 11.8 of the Agreement, which requires that "any and all claims, actions, causes of action, suits, and proceedings relating to this agreement or the other agreements contemplated herein shall be filed and maintained only in the Bankrutpcy Court."[8] Because giving the term Heritage Home Group's proposed plain

---

[7] JA-737–JA-738.
[8] JA-172.

5

meaning would render part of the Agreement superfluous, we adopt the meaning that gives all the terms of the contract their full effect.[9]  This term understands "disputed item" to exclude threshold matters of contract interpretation, which may be resolved by the courts in the first instance under the Agreement and Amendment No. 2.

This clear intent, confirmed by the language of the Bankruptcy Court's order approving the sale, excludes disputes other than accounting items from the arbitration provisions of Amendment No. 2.  We need not hold that parties cannot contract to submit matters of contract interpretation to arbitration before an accounting firm.  We only conclude that the parties here have not done so.

IV.

For the foregoing reasons, we will affirm the order of the District Court.

---

[9] *See New Castle Cnty., Del. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 174 F.3d 338, 349 (3d Cir. 1999) ("[A] single clause or paragraph of a contract cannot be read in isolation, but must be read in context, and every portion of the contract deserves consideration.") (citing *Cheseroni v. Nationwide Mut. Ins. Co.*, 402 A.2d 1215, 1217 (Del. 1979)).