NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 18-2850

———————————

ZIBA MONFARED,

Appellant
v.

ST. LUKE'S UNIVERSITY HEALTH NETWORK; ST. LUKE'S PHYSICIAN GROUP
INC. FKA St. Luke's Health Services Inc.; NAZARETH FAMILY PRACTICE

———————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 5-15-cv-04017)
District Judge: Honorable Joseph F. Leeson, Jr.

———————————

Submitted Under Third Circuit L.A.R. 34.1(a)
April 15, 2019

Before: AMBRO, GREENAWAY, JR., and SCIRICA, Circuit Judges

(Opinion filed: May 10, 2019)

———————————

OPINION*

———————————

AMBRO, Circuit Judge

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Dr. Ziba Monfared worked as a physician in Nazareth, Pennsylvania, for St. Luke's University Health Network, St. Luke's Physician Group, Inc., and Nazareth Family Practice (collectively "St. Luke's") from May 2010 until her termination in December 2014. Dr. Monfared brought retaliation claims against St. Luke's under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*., 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act, 43 PS. §§ 951 *et seq*. She alleged that it terminated her after she complained about racially discriminatory and harassing remarks by management. St. Luke's filed a Motion to Compel Arbitration arguing that the dispute was covered by her employment agreement.[1] The District Court granted the

---

[1] The applicable provision of the employment agreement reads in full:

**Governing Law; Dispute Resolution**

This letter agreement shall be deemed to have been made and shall be construed and interpreted in accordance with the laws of the Commonwealth of Pennsylvania. In any equitable action for specific performance or injunctive relief, the parties hereby submit to the jurisdiction of the Court of Lehigh County, Commonwealth of Pennsylvania. Except for actions for specific performance or injunctive relief, if a dispute or claim should arise that does not get resolved through negotiation of the parties, the parties will attempt in good faith to resolve the dispute or claim by mediation administered by the American Arbitration Association (AAA) under its Employment Mediation Rules, before resorting to arbitration. . . . If the matter has not been resolved within sixty (60) days of the initiation of such procedure, or if either party refuses to participate in the mediation, the controversy shall be resolved by binding arbitration under the Employment Arbitration Rules of the AAA, by one neutral arbitrator. . . . THE ARBITRATOR SHALL NOT AWARD ANY PARTY PUNITIVE OR EXEMPLARY DAMAGES, AND EACH PARTY HEREBY IRREVICABLY WAIVES ANY RIGHT TO SEEK SUCH DAMAGES. All costs of mediation or arbitration shall evenly be divided between the parties, exclusive of each party's legal fees, each of which shall be borne by the party that incurs them.

J.A. at 4 (emphasis added; bold in text).

2

motion, after which the matter proceeded to arbitration.[2] The arbitrator ultimately ruled in favor of St. Luke's, and the District Court confirmed this award and dismissed Dr. Monfared's claims. She now appeals, arguing that her claims were not subject to arbitration under the contract.

We apply plenary review over the District Court's ruling on the motion to compel arbitration, and we assess the motion to compel itself under the standard for summary judgment in Federal Rule of Civil Procedure 56(a). *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 219 (3d Cir. 2014). Thus we view the facts in the light most favorable to the non-moving party, and grant the motion only if there is no genuine dispute as to any material fact and the movant—here St. Luke's—is entitled to judgment as a matter of law. *Id.*

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). To decide whether to compel arbitration under the FAA, we first consider "whether there is a valid agreement to arbitrate between the parties." *Flintkote Co.*, 769 F.3d at 220. If so, we then consider "whether the merits-based dispute in question falls within the scope of that valid agreement." *Id.* Here, the parties agree that Dr. Monfared's employment contract contained a valid arbitration agreement. *See*

---

[2] The record does not reflect whether, in accord with the terms of the employment contract, the parties engaged in mediation before proceeding to arbitration. As the parties have not discussed the question of mediation, we presume it does not affect our analysis.

3

Appellant's Br. at 15–16. The only question, therefore, is whether her claims are within the scope of that agreement.

"In determining whether the particular dispute falls within a valid arbitration agreement's scope, 'there is a presumption of arbitrability[.]'" *Century Indem. Co.*, 584 F.3d at 524 (quoting *AT & T Techs., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 650 (1986)). This presumption applies whenever a contract has an arbitration clause and is "particularly applicable where the clause is [] broad." *AT & T Techs., Inc.*, 475 U.S. at 650. When the presumption applies, "a court may not deny a motion to compel arbitration 'unless it may be said with positive assurance that the . . . arbitration clause is not susceptible of an interpretation that covers the dispute.'" *Cup v. Ampco Pittsburgh Corp.*, 903 F.3d 58, 64–65 (3d Cir. 2018) (quoting *AT & T Techs., Inc.*, 475 U.S. at 650). In relevant part, the contract here reads:

> Except for actions for specific performance or injunctive relief, if a dispute or claim should arise that does not get resolved through negotiation of the parties, the parties will attempt in good faith to resolve the dispute or claim by mediation administered by the American Arbitration Association (AAA) under its Employment Mediation Rules, before resorting to arbitration.

J.A. at 4. Dr. Monfared argues that this language is limited to disputes over the interpretation of the letter agreement itself, because an earlier sentence in the same section of the contract states that "[t]his letter agreement shall be deemed to have been made and shall be construed and interpreted in accordance with the laws of the Commonwealth of Pennsylvania." She notes that, unlike many arbitration agreements, hers does not include language referring to "any claim arising from" her employment, or the like.

4

We do not agree. It does not appear that any federal court has addressed an arbitration agreement with language similar to this one. But in light of the presumption in favor of arbitrability, we think the phrase "if a dispute or claim should arise" is best understood as functionally equivalent to more standard language that would expressly sweep in any claim relating to Dr. Monfared's employment. The only textual exclusion applies only to actions for specific performance or injunctive relief. And it does not make sense to view the entire section at issue as limited to the interpretation of the contract itself. The section includes effectively three provisions: a choice-of-law provision stating that Pennsylvania law shall apply to the construction of the contract; a forum selection clause providing for jurisdiction in the Lehigh County court; and the arbitration provision. The choice-of-law provision is naturally limited to interpretation of the contract, and this does not reflect on the neighboring provisions, which address separate concerns.

Thus we affirm.
_____