**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1405
_____

IN RE: ROTAVIRUS VACCINES ANTITRUST LITIGATION

SUGARTOWN PEDIATRICS, L.L.C.; SCHWARTZ PEDIATRICS S.C.;
MARGIOTTI & KROLL PEDIATRICS, P.C., individually and on behalf of all others
similarly situated

v.

MERCK SHARP & DOHME CORP.,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-18-cv-01734)
District Judge:  Hon. J. Curtis Joyner
_____

Argued October 2, 2019

Before: SHWARTZ, FUENTES, FISHER, *Circuit Judges.*

(Filed: October 28, 2019)

Ashley E. Bass [Argued]
Mark W. Mosier
Andrew D. Lazerow
Covington & Burling
One City Center
850 10th Street, N.W.
One City Center
Washington, DC 20001

Lisa C. Dykstra
Morgan Lewis & Bockius
1701 Market Street
Philadelphia, PA 19103

*Counsel for Appellants*

Daniel J. Walker [Argued]
Berger Montague
2001 Pennsylvania Avenue, N.W.,
Suite 300
Washington, DC 20006

Eric L. Cramer
Zachary D. Caplan
Marc Edelson
Berger Montague
1818 Market Street
Suite 3600
Philadelphia, PA 19103

Daniel A. Small
Daniel H. Silverman
Jessica B. Weiner
Cohen Milstein
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005

Gary L. Azorsky
Cohen Milstein
1717 Arch Street
3 Logan Square, Suite 3610
Philadelphia, PA 19103

Gary Smith
Hausfeld
325 Chestnut Street, Suite 900
Philadelphia, PA 19106

*Counsel for Appellees*

_____

OPINION[**]
_____

FUENTES, *Circuit Judge*.

Merck Sharp & Dohme Corp. ("Merck") appeals the District Court's order denying its motion to compel individual arbitration and stay proceedings of a putative antitrust class action lawsuit filed by Sugartown Pediatrics, LLC, Schwartz Pediatrics S.C., and Margiotti & Kroll Pediatrics, P.C. (collectively, "Plaintiffs").[1] For the reasons that follow, we will vacate and remand for further proceedings.

## I. Background

Plaintiffs are pediatric medical practices that, between 2014 and 2018, were members of two Physician Buying Groups, Main Street Vaccines and CCPA Purchasing Partners, L.L.C. (collectively, the "PBGs"). Plaintiffs authorized the PBGs to negotiate contracts with vaccine manufacturers such as Merck for the sale and purchase of vaccines through signed membership agreements.[2] Acting pursuant to the membership agreements, the PBGs entered into contracts with Merck, which set forth pricing for the sale and purchase of vaccines at discounted rates (the "PBG Contracts"). The PBG Contracts

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Although Margiotti & Kroll Pediatrics, P.C. filed a separate action, its action was consolidated into this action on September 5, 2018.

[2] The membership agreement between Merck and Main Street Vaccines specifically provided that the "member practice" agreed to participate "in a vaccine purchasing contract with Merck Vaccines (Merck)." *In re Rotavirus Vaccines Antitrust Litig.*, 362 F. Supp. 3d 255, 263 n.3 (E.D. Pa. 2019).

contained the following arbitration provision: "Any controversy, claim or dispute arising out of or relating to the performance, construction, interpretation or enforcement of this Agreement shall, if not resolved through negotiations between the parties, be submitted to mandatory binding confidential arbitration pursuant to the Federal Arbitration Act . . . ."[3] Although Plaintiffs were not signatories to the PBG Contracts, they chose to purchase RotaTeq Rotavirus vaccines directly from Merck at the discounted pricing set forth in the PBG Contracts.

Unhappy with Merck's pricing, Plaintiffs filed a putative class action suit against Merck under the Sherman Act[4] alleging that "Merck leverages its monopoly power in multiple pediatric vaccine markets to maintain its monopoly power in the Rotavirus Vaccine Market and, consequently, to charge supracompetitive prices to purchasers of its rotavirus vaccines."[5] Plaintiffs further allege that Merck "coopted the PBGs . . . to impose and enforce its anticompetitive and exclusionary conduct."[6]

Merck moved to compel individual arbitration and stay proceedings pursuant to the arbitration provisions in the PBG Contracts. Merck argued that, although Plaintiffs did not sign the PBG Contracts, they are nonetheless required to arbitrate their claims under principles of agency law and equitable estoppel. Without the benefit of discovery or notice to the parties, the District Court applied the summary judgment standard and denied the motion. The District Court considered the PBG Contracts and membership agreements,

---

[3] *Id.* at 259. Both PBG Contracts at issue contain identical arbitration provisions.
[4] 15 U.S.C. §§ 1, 2.
[5] J.A. 31.
[6] J.A. 54.

4

and concluded that "without more" it could not find that Merck met its burden of establishing an agency relationship as a matter of law.[7] The District Court also concluded that Plaintiffs were not equitably estopped from litigating their claims against Merck because Merck failed to make the "requisite showing of relatedness or congruence . . . ."[8] This appeal followed.

## II. Standard of Review[9]

We review the District Court's denial of an order compelling arbitration *de novo*, since it presents a question of law.[10] "We apply the same standard as the District Court, so 'we are first obliged to determine which standard should have been applied.'"[11]

## III. Discussion

In considering arbitration agreements under the Federal Arbitration Act ("FAA"), "we have recognized that '[a]rbitration is strictly a matter of contract. If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so.'"[12] Where there is no express arbitration agreement between the parties, we have repeatedly held "that a

---

[7] *In re Rotavirus*, 362 F. Supp. 3d at 263.
[8] *Id.* at 264.
[9] The District Court had federal question jurisdiction under 28 U.S.C. § 1331. We have jurisdiction over the appeal pursuant to 9 U.S.C. § 16(a)(1)(B).
[10] *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 100 n.61 (3d Cir. 2018).
[11] *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 217 (3d Cir. 2019) (quoting *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013)).
[12] *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 219–20 (3d Cir. 2014) (quoting *Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999)).

party, despite being a non-signatory to an arbitration agreement, may be equitably bound to arbitrate 'under traditional principles of contract and agency law.'"[13]

However, to determine whether Plaintiffs, as non-signatories to the PBG Contracts, should be required to arbitrate, we must first determine the standard to be applied in deciding the motion to compel arbitration. In *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, we held that "when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay."[14] "But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question."[15]

Merck argues that the District Court should have decided its motion to compel arbitration under the motion to dismiss standard or, at the least, allowed the parties to engage in limited discovery on the issue of arbitrability. Merck relies upon the relationship between Plaintiffs and the PBGs to assert that the PBGs acted as Plaintiffs' agents in their negotiations with Merck and thus Plaintiffs should be required to arbitrate their claims.

---

[13] *Id.* at 220 (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194–95 (3d Cir. 2001)).
[14] 716 F.3d at 776 (internal quotation marks omitted).
[15] *Id.* (internal quotation marks omitted).

6

While the District Court properly declined to apply the motion to dismiss standard, it should have allowed limited discovery on the issue of arbitrability.

The District Court properly declined to apply the motion to dismiss standard because it is not apparent from the Complaint that Plaintiffs' claims are subject to the PBG Contracts' arbitration provisions. The Complaint reveals that the PBGs entered into contracts with Merck that provided for the purchase of Merck vaccines at discounted pricing. Plaintiffs do not dispute that they were members of the PBGs and that they purchased vaccines from Merck at the pricing set forth in the PBG Contracts. However, the Complaint does not mention any arbitration agreement. Further, Plaintiffs deny knowledge of the arbitration provisions in the PBG Contracts,[16] and dispute the PBGs' authority to agree to arbitration. Therefore, the District Court properly declined to employ the motion to dismiss standard.[17]

However, the District Court should have allowed the parties to engage in limited discovery before applying the summary judgment standard. Under Pennsylvania law, an agency relationship exists where there is "(1) manifestation by the principal that the agent shall act for him; (2) the acceptance of the undertaking by the agent; and (3) the control of the endeavor in the hands of the principal."[18] The Complaint sheds little light on the precise

---

[16] *But see Rosenberry v. Evans*, 48 A.3d 1255, 1262 (Pa. Super. Ct. 2012) ("We acknowledge that it is well settled in the law of this jurisdiction that knowledge of an agent, acting within the scope of his authority, real or apparent, may be imputed to the principal, and therefore, knowledge of the agent is knowledge of the principal." (internal quotation marks omitted)).

[17] *See Guidotti*, 716 F.3d at 774.

[18] *Tribune-Review Publ'g Co. v. Westmoreland Cty. Hous. Auth.*, 833 A.2d 112, 119–20 (Pa. 2003) (citing *Basile v. H & R Block, Inc.*, 761 A.2d 1115 (Pa. 2000)).

relationship between Plaintiffs and the PBGs. Even taking the membership agreements and PBG Contracts into consideration, it is unclear whether an agency relationship exists as a matter of law. While the membership agreements explicitly delegate authority for the PBGs to negotiate pricing with Merck, they do not shed light on the level of control Plaintiffs exercised over the PBGs in performance of their delegated authority. The PBG Contracts similarly do not define the scope of control Plaintiffs exercised over the PBGs.

Because arbitrability is not apparent on the face of the Complaint, limited discovery on the issue of arbitrability is appropriate, after which Merck may file a renewed motion to compel arbitration.[19]

## IV. Conclusion

For the foregoing reasons, we will vacate the District Court's Order denying Merck's motion to compel arbitration and remand for further proceedings consistent with this opinion.[20]

---

[19] *Guidotti*, 716 F.3d at 776.

[20] We note that the District Court appears to have applied the wrong test in analyzing Merck's equitable estoppel argument. As the District Court properly recognized, in *E.I. DuPont.*, we outlined two theories under which equitable estoppel may apply to bind a non-signatory to an arbitration clause. 269 F.3d at 199. The District Court applied the test for when a non-signatory attempts to bind a signatory to an arbitration agreement. However, because this case involves a signatory attempting to bind a non-signatory, the correct test to be applied is whether "the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." *Id.* We leave it to the District Court to decide on remand whether it needs to evaluate this theory of equitable estoppel to resolve the motion to compel.